(Slip Opinion) OCTOBER TERM, 2017 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DIGITAL REALTY TRUST, INC. *v.* SOMERS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 16–1276. Argued November 28, 2017—Decided February 21, 2018

Endeavoring to root out corporate fraud, Congress passed the Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley) and the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank). Both Acts shield whistleblowers from retaliation, but they differ in important respects. Sarbanes-Oxley applies to all "employees" who report misconduct to the Securities and Exchange Commission (SEC or Commission), any other federal agency, Congress, or an internal supervisor. 18 U. S. C. §1514A(a)(1). Dodd-Frank defines a "whistleblower" as "any individual who provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U. S. C. §78u–6(a)(6). A whistleblower so defined is eligible for an award if original information provided to the SEC leads to a successful enforcement action. §78u–6(b)–(g). And he or she is protected from retaliation in three situations, see §78u–6(h)(1)(A)(i)–(iii), including for "making disclosures that are required or protected under" Sarbanes-Oxley or other specified laws, §78u–6(h)(1)(A)(iii). Sarbanes-Oxley's anti-retaliation provision contains an administrative-exhaustion requirement and a 180-day administrative complaint-filing deadline, see 18 U. S. C. §1514A(b)(1)(A), (2)(D), whereas Dodd-Frank permits a whistleblower to sue an employer directly in federal district court, with a default six-year limitation period, see §78u–6(h)(1)(B)(i), (iii)(I)(aa).

The SEC's regulations implementing the Dodd-Frank provision contain two discrete whistleblower definitions. For purposes of the award program, Rule 21F–2 requires a whistleblower to "provide the Commission with information" relating to possible securities-law violations. 17 CFR §240.21F–2(a)(1). For purposes of the anti-retaliation protections, however, the Rule does not require SEC re-

porting.  See §240.21F–2(b)(1)(i)–(ii).

   Respondent Paul Somers alleges that petitioner Digital Realty Trust, Inc. (Digital Realty) terminated his employment shortly after he reported to senior management suspected securities-law violations by the company.  Somers filed suit, alleging, *inter alia*, a claim of whistleblower retaliation under Dodd-Frank.  Digital Realty moved to dismiss that claim on the ground that Somers was not a whistleblower under §78u–6(h) because he did not alert the SEC prior to his termination.  The District Court denied the motion, and the Ninth Circuit affirmed.  The Court of Appeals concluded that §78u–6(h) does not necessitate recourse to the SEC prior to gaining "whistleblower" status, and it accorded deference to the SEC's regulation under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837.

*Held*: Dodd-Frank's anti-retaliation provision does not extend to an individual, like Somers, who has not reported a violation of the securities laws to the SEC.  Pp. 9–19.

   (a) A statute's explicit definition must be followed, even if it varies from a term's ordinary meaning.  *Burgess* v. *United States*, 553 U. S. 124, 130.  Section 78u–6(a) instructs that the statute's definition of "whistleblower" "shall apply" "[i]n this section," that is, throughout §78u–6.  The Court must therefore interpret the term "whistleblower" in §78u–6(h), the anti-retaliation provision, in accordance with that definition.

   The whistleblower definition operates in conjunction with the three clauses of §78u–6(h)(1)(A) to spell out the provision's scope.  The definition first describes *who* is eligible for protection—namely, a "whistleblower" who provides pertinent information "to the Commission." §78u–6(a)(6).  The three clauses then describe what *conduct*, when engaged in by a "whistleblower," is shielded from employment discrimination.  An individual who meets both measures may invoke Dodd-Frank's protections.  But an individual who falls outside the protected category of "whistleblowers" is ineligible to seek redress under the statute, regardless of the conduct in which that individual engages.  This reading is reinforced by another whistleblower-protection provision in Dodd-Frank, see 12 U. S. C. §5567(b), which imposes no requirement that information be conveyed to a government agency.  Pp. 9–11.

   (b) The Court's understanding is corroborated by Dodd-Frank's purpose and design.  The core objective of Dodd-Frank's whistleblower program is to aid the Commission's enforcement efforts by "motivat[ing] people who know of securities law violations to *tell the SEC*." S. Rep. No. 111–176, p. 38 (emphasis added).  To that end, Congress provided monetary awards to whistleblowers who furnish actionable

information to the Commission. Congress also complemented the financial incentives for SEC reporting by heightening protection against retaliation. Pp. 11–12.

(c) Somers and the Solicitor General contend that Dodd-Frank's "whistleblower" definition applies only to the statute's award program and not, as the definition plainly states, to its anti-retaliation provision. Their concerns do not support a departure from the statutory text. Pp. 12–18.

(1) They claim that the Court's reading would vitiate the protections of clause (iii) for whistleblowers who make disclosures to persons and entities other than the SEC. See §78u–6(h)(1)(A)(iii). But the plain-text reading of the statute leaves the third clause with substantial meaning by protecting a whistleblower who reports misconduct *both* to the SEC and to another entity, but suffers retaliation because of the latter, non-SEC, disclosure. Pp. 13–15.

(2) Nor would the Court's reading jettison protections for auditors, attorneys, and other employees who are required to report information within the company before making external disclosures. Such employees would be shielded *as soon as they also provide relevant information to the Commission.* And Congress may well have considered adequate the safeguards already afforded to such employees by Sarbanes-Oxley. Pp. 15–16.

(3) Applying the "whistleblower" definition as written, Somers and the Solicitor General further protest, will allow "identical misconduct" to "go punished or not based on the happenstance of a separate report" to the SEC. Brief for Respondent 37–38. But it is understandable that the statute's retaliation protections, like its financial rewards, would be reserved for employees who have done what Dodd-Frank seeks to achieve by reporting information about unlawful activity to the SEC. P. 16.

(4) The Solicitor General observes that the statute contains no apparent requirement of a "temporal or topical connection between the violation reported to the Commission and the internal disclosure for which the employee suffers retaliation." Brief for United States as *Amicus Curiae* 25. The Court need not dwell on related hypotheticals, which veer far from the case at hand. Pp. 16–18.

(5) Finally, the interpretation adopted here would not undermine clause (ii) of §78u–6(h)(1)(A), which prohibits retaliation against a whistleblower for "initiating, testifying in, or assisting in any investigation or . . . action of the Commission based upon" information conveyed to the SEC by a whistleblower in accordance with the statute. The statute delegates authority to the Commission to establish the "manner" in which a whistleblower may provide information to the SEC. §78u–6(a)(6). Nothing prevents the Commission from enumer-

ating additional means of SEC reporting, including through testimony protected by clause (ii).  P. 18.

  (d) Because "Congress has directly spoken to the precise question at issue," *Chevron,* 467 U. S., at 842, deference is not accorded to the contrary view advanced by the SEC in Rule 21F–2.  Pp. 18–19.

850 F. 3d 1045, reversed and remanded.

  GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, BREYER, SOTOMAYOR, and KAGAN, JJ., joined.  SOTOMAYOR, J., filed a concurring opinion, in which BREYER, J., joined.  THOMAS, J., filed an opinion concurring in part and concurring in the judgment, in which ALITO and GORSUCH, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1276

_____

## DIGITAL REALTY TRUST, INC., PETITIONER *v.* PAUL SOMERS

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[February 21, 2018]

JUSTICE GINSBURG delivered the opinion of the Court.

Endeavoring to root out corporate fraud, Congress passed the Sarbanes-Oxley Act of 2002, 116 Stat. 745 (Sarbanes-Oxley), and the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376 (Dodd-Frank). Both Acts shield whistleblowers from retaliation, but they differ in important respects. Most notably, Sarbanes-Oxley applies to all "employees" who report misconduct to the Securities and Exchange Commission (SEC or Commission), any other federal agency, Congress, or an internal supervisor. 18 U. S. C. §1514A(a)(1). Dodd-Frank delineates a more circumscribed class; it defines "whistleblower" to mean a person who provides "information relating to a violation of the securities laws to the Commission." 15 U. S. C. §78u–6(a)(6). A whistleblower so defined is eligible for an award if original information he or she provides to the SEC leads to a successful enforcement action. §78u–6(b)–(g). And, most relevant here, a whistleblower is protected from retaliation for, *inter alia*, "making disclosures that are required or protected under" Sarbanes-Oxley, the Securi-

ties Exchange Act of 1934, the criminal anti-retaliation proscription at 18 U. S. C. §1513(e), or any other law subject to the SEC's jurisdiction. 15 U. S. C. §78u–6(h)(1)(A)(iii).

The question presented: Does the anti-retaliation provision of Dodd-Frank extend to an individual who has not reported a violation of the securities laws to the SEC and therefore falls outside the Act's definition of "whistleblower"? Pet. for Cert. (I). We answer that question "No": To sue under Dodd-Frank's anti-retaliation provision, a person must first "provid[e] . . . information relating to a violation of the securities laws to the Commission." §78u–6(a)(6).

## I

## A

"To safeguard investors in public companies and restore trust in the financial markets following the collapse of Enron Corporation," Congress enacted Sarbanes-Oxley in 2002. *Lawson* v. *FMR LLC*, 571 U. S. 429, ___ (2014) (slip op., at 1). Most pertinent here, Sarbanes-Oxley created new protections for employees at risk of retaliation for reporting corporate misconduct. See 18 U. S. C. §1514A. Section 1514A prohibits certain companies from discharging or otherwise "discriminat[ing] against an employee in the terms and conditions of employment because" the employee "provid[es] information . . . or otherwise assist[s] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation" of certain criminal fraud statutes, any SEC rule or regulation, or "any provision of Federal law relating to fraud against shareholders." §1514A(a)(1). An employee qualifies for protection when he or she provides information or assistance either to a federal regulatory or law enforcement agency, Congress, or any "person with supervisory author-

ity over the employee." §1514A(a)(1)(A)–(C).[1]

To recover under §1514A, an aggrieved employee must exhaust administrative remedies by "filing a complaint with the Secretary of Labor." §1514A(b)(1)(A); see *Lawson*, 571 U. S., at \_\_\_–\_\_\_ (slip op., at 5–6). Congress prescribed a 180-day limitation period for filing such a complaint. §1514A(b)(2)(D). If the agency "does not issue a final decision within 180 days of the filing of [a] complaint, and the [agency's] delay is not due to bad faith on the claimant's part, the claimant may proceed to federal district court for *de novo* review." *Id.*, at \_\_\_ (slip op., at 6) (citing §1514A(b)). An employee who prevails in a proceeding under §1514A is "entitled to all relief necessary to make the employee whole," including reinstatement, backpay with interest, and any "special damages sustained as a result of the discrimination," among such damages, litigation costs. §1514A(c).

## B

### 1

At issue in this case is the Dodd-Frank anti-retaliation provision enacted in 2010, eight years after the enactment of Sarbanes-Oxley. Passed in the wake of the 2008 financial crisis, Dodd-Frank aimed to "promote the financial stability of the United States by improving accountability and transparency in the financial system." 124 Stat. 1376.

Dodd-Frank responded to numerous perceived shortcomings in financial regulation. Among them was the SEC's need for additional "power, assistance and money at its disposal" to regulate securities markets. S. Rep. No. 111–176, pp. 36, 37 (2010). To assist the Commission "in

_____

[1] Sarbanes-Oxley also prohibits retaliation against an "employee" who "file[s], . . . testif[ies], participate[s] in, or otherwise assist[s] in a proceeding filed or about to be filed . . . relating to an alleged violation of" the same provisions of federal law addressed in 18 U. S. C. §1514A(a)(1). See §1514A(a)(2).

identifying securities law violations," the Act established
"a new, robust whistleblower program designed to moti-
vate people who know of securities law violations to tell
the SEC." *Id.,* at 38. And recognizing that "whistleblow-
ers often face the difficult choice between telling the truth
and . . . committing 'career suicide,'" Congress sought to
protect whistleblowers from employment discrimination.
*Id.,* at 111, 112.

Dodd-Frank implemented these goals by adding a new
provision to the Securities Exchange Act of 1934: 15
U. S. C. §78u–6. Section 78u–6 begins by defining a
"whistleblower" as "any individual who provides . . . in-
formation relating to a violation of the securities laws *to
the Commission*, in a manner established, by rule or regu-
lation, by the Commission." §78u–6(a)(6) (emphasis
added). That definition, the statute directs, "shall apply"
"[i]n this section"—*i.e.,* throughout §78u–6. §78u–6(a).

Section 78u–6 affords covered whistleblowers both
incentives and protection. First, the section creates an
award program for "whistleblowers who voluntarily
provid[e] original information to the Commission that
le[ads] to the successful enforcement of [a] covered judicial
or administrative action." §78u–6(b)(1). A qualifying
whistleblower is entitled to a cash award of 10 to 30 per-
cent of the monetary sanctions collected in the enforce-
ment action. See §78u–6(b)(1)(A)–(B).

Second, §78u–6(h) prohibits an employer from discharg-
ing, harassing, or otherwise discriminating against a
"whistleblower" "because of any lawful act done by the
whistleblower" in three situations: first, "in providing
information to the Commission in accordance with [§78u–
6]," §78u–6(h)(1)(A)(i); second, "in initiating, testifying in,
or assisting in any investigation or . . . action of the Com-
mission based upon" information provided to the SEC in
accordance with §78u–6, §78u–6(h)(1)(A)(ii); and third, "in
making disclosures that are required or protected under"

either Sarbanes-Oxley, the Securities Exchange Act of 1934, the criminal anti-retaliation prohibition at 18 U. S. C. §1513(e),[2] or "any other law, rule, or regulation subject to the jurisdiction of the Commission," §78u–6(h)(1)(A)(iii). Clause (iii), by cross-referencing Sarbanes-Oxley and other laws, protects disclosures made to a variety of individuals and entities in addition to the SEC. For example, the clause shields an employee's reports of wrongdoing to an internal supervisor if the reports are independently safeguarded from retaliation under Sarbanes-Oxley. See *supra,* at 2–3.[3]

The recovery procedures under the anti-retaliation provisions of Dodd-Frank and Sarbanes-Oxley differ in critical respects. First, unlike Sarbanes-Oxley, which contains an administrative-exhaustion requirement and a 180-day administrative complaint-filing deadline, see 18 U. S. C. §1514A(b)(1)(A), (2)(D), Dodd-Frank permits a whistleblower to sue a current or former employer directly

—————

[2] Section 1513(e) provides: "Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both."

[3] Section 78u–6(h)(1)(A) reads in full:

"No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

"(i) in providing information to the Commission in accordance with this section;

"(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

"(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U. S. C. §7201 et seq.), this chapter, including section 78j–l(m) of this title, section 1513(e) of title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission."

in federal district court, with a default limitation period of six years, see §78u–6(h)(1)(B)(i), (iii)(I)(aa).  Second, Dodd-Frank instructs a court to award to a prevailing plaintiff double backpay with interest, see §78u–6(h)(1)(C)(ii), while Sarbanes-Oxley limits recovery to actual backpay with interest, see 18 U. S. C. §1514A(c)(2)(B).  Like Sarbanes-Oxley, however, Dodd-Frank authorizes reinstatement and compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.   Compare §78u–6(h)(1)(C)(i), (iii), with 18 U. S. C. §1514A(c)(2)(A), (C).[4]

2

Congress authorized the SEC "to issue such rules and regulations as may be necessary or appropriate to implement the provisions of [§78u–6] consistent with the purposes of this section." §78u–6(j).  Pursuant to this authority, the SEC published a notice of proposed rulemaking to "Implemen[t] the Whistleblower Provisions" of Dodd-Frank.  75 Fed. Reg. 70488 (2010).  Proposed Rule 21F–2(a) defined a "whistleblower," for purposes of both the award and anti-retaliation provisions of §78u–6, as one or more individuals who "provide the Commission with information relating to a potential violation of the securities laws."   *Id.,* at 70519 (proposed 17 CFR §240.21F–2(a)).  The proposed rule, the agency noted, "tracks the statutory definition of a 'whistleblower'" by requiring information reporting to the SEC itself.  75 Fed. Reg. 70489.

In promulgating the final Rule, however, the agency changed course.  Rule 21F–2, in finished form, contains two discrete "whistleblower" definitions.  See 17 CFR §240.21F–2(a)–(b) (2017).  For purposes of the award program, the Rule states that "[y]ou are a whistleblower if

——————

[4] Unlike Dodd-Frank, Sarbanes-Oxley explicitly entitles a prevailing employee to "all relief necessary to make the employee whole," including "compensation for any special damages sustained as a result of the discrimination."  18 U. S. C. §1514A(c)(1), (2)(C).

. . . you *provide the Commission* with information . . .
relat[ing] to a possible violation of the Federal securities
laws." §240.21F–2(a)(1) (emphasis added). The infor-
mation must be provided to the SEC through its website
or by mailing or faxing a specified form to the SEC Office
of the Whistleblower. See *ibid.*; §240.21F–9(a)(1)–(2).

"For purposes of the anti-retaliation protections," how-
ever, the Rule states that "[y]ou are a whistleblower if . . .
[y]ou possess a reasonable belief that the information you
are providing relates to a possible securities law violation"
and "[y]ou provide that information in a manner described
in" clauses (i) through (iii) of §78u–6(h)(1)(A). 17 CFR
§240.21F–2(b)(1)(i)–(ii). "The anti-retaliation protections
apply," the Rule emphasizes, "whether or not you satisfy
the requirements, procedures and conditions to qualify for
an award." §240.21F–2(b)(1)(iii). An individual may
therefore gain anti-retaliation protection as a "whistle-
blower" under Rule 21F–2 without providing information
to the SEC, so long as he or she provides information in a
manner shielded by one of the anti-retaliation provision's
three clauses. For example, a report to a company super-
visor would qualify if the report garners protection under
the Sarbanes-Oxley anti-retaliation provision.[5]

## C

Petitioner Digital Realty Trust, Inc. (Digital Realty) is a
real estate investment trust that owns, acquires, and
develops data centers. See Brief for Petitioner 3. Digital
Realty employed respondent Paul Somers as a Vice Presi-
dent from 2010 to 2014. See 119 F. Supp. 3d 1088, 1092
(ND Cal. 2015). Somers alleges that Digital Realty termi-
nated him shortly after he reported to senior management
suspected securities-law violations by the company. See

─────────

[5] In 2015, the SEC issued an interpretive rule reiterating that anti-
retaliation protection is not contingent on a whistleblower's provision of
information to the Commission. See 80 Fed. Reg. 47829 (2015).

*ibid.* Although nothing impeded him from alerting the SEC prior to his termination, he did not do so. See Tr. of Oral Arg. 45. Nor did he file an administrative complaint within 180 days of his termination, rendering him ineligible for relief under Sarbanes-Oxley. See *ibid.*; 18 U. S. C. §1514A(b)(2)(D).

Somers brought suit in the United States District Court for the Northern District of California alleging, *inter alia*, a claim of whistleblower retaliation under Dodd-Frank. Digital Realty moved to dismiss that claim, arguing that "Somers does not qualify as a 'whistleblower' under [§78u–6(h)] because he did not report any alleged law violations to the SEC." 119 F. Supp. 3d, at 1094. The District Court denied the motion. Rule 21F–2, the court observed, does not necessitate recourse to the SEC prior to gaining "whistleblower" status under Dodd-Frank. See *id.,* at 1095–1096. Finding the statutory scheme ambiguous, the court accorded deference to the SEC's Rule under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). See 119 F. Supp. 3d, at 1096–1106.

On interlocutory appeal, a divided panel of the Court of Appeals for the Ninth Circuit affirmed. 850 F. 3d 1045 (2017). The majority acknowledged that Dodd-Frank's definitional provision describes a "whistleblower" as an individual who provides information to the SEC itself. *Id.,* at 1049. But applying that definition to the anti-retaliation provision, the majority reasoned, would narrow the third clause of §78u–6(h)(1)(A) "to the point of absurdity": The statute would protect employees only if they "reported possible securities violations both internally and to the SEC." *Ibid.* Such dual reporting, the majority believed, was unlikely to occur. *Ibid.* Therefore, the majority concluded, the statute should be read to protect employees who make disclosures privileged by clause (iii) of §78u–6(h)(1)(A), whether or not those employees also provide information to the SEC. *Id.,* at 1050. In any

event, the majority held, the SEC's resolution of any statutory ambiguity warranted deference. *Ibid.* Judge Owens dissented. In his view, the statutory definition of whistleblower was clear, left no room for interpretation, and plainly governed. *Id.,* at 1051.

Two other Courts of Appeals have weighed in on the question before us. The Court of Appeals for the Fifth Circuit has held that employees must provide information to the SEC to avail themselves of Dodd-Frank's anti-retaliation safeguard. See *Asadi* v. *G. E. Energy (USA), L. L. C.*, 720 F. 3d 620, 630 (2013). A divided panel of the Court of Appeals for the Second Circuit reached the opposite conclusion, over a dissent by Judge Jacobs. See *Berman* v. *NEO@OGILVY LLC*, 801 F. 3d 145, 155 (2013). We granted certiorari to resolve this conflict, 582 U. S. \_\_\_ (2017), and now reverse the Ninth Circuit's judgment.

## II

"When a statute includes an explicit definition, we must follow that definition," even if it varies from a term's ordinary meaning. *Burgess* v. *United States*, 553 U. S. 124, 130 (2008) (internal quotation marks omitted). This principle resolves the question before us.

## A

Our charge in this review proceeding is to determine the meaning of "whistleblower" in §78u–6(h), Dodd-Frank's anti-retaliation provision. The definition section of the statute supplies an unequivocal answer: A "whistleblower" is "any individual who provides . . . information relating to a violation of the securities laws *to the Commission*." §78u–6(a)(6) (emphasis added). Leaving no doubt as to the definition's reach, the statute instructs that the "definitio[n] shall apply" "[i]n this section," that is, throughout §78u–6. §78u–6(a)(6).

The whistleblower definition operates in conjunction

with the three clauses of §78u–6(h)(1)(A) to spell out the provision's scope. The definition first describes *who* is eligible for protection—namely, a whistleblower who provides pertinent information "to the Commission." §78u–6(a)(6). The three clauses of §78u–6(h)(1)(A) then describe what *conduct*, when engaged in by a whistle-blower, is shielded from employment discrimination. See §78u–6(h)(1)(A)(i)–(iii). An individual who meets both measures may invoke Dodd-Frank's protections. But an individual who falls outside the protected category of "whistleblowers" is ineligible to seek redress under the statute, regardless of the conduct in which that individual engages.

Reinforcing our reading, another whistleblower-protection provision in Dodd-Frank imposes no requirement that information be conveyed to a government agency. Title 10 of the statute, which created the Consumer Financial Protection Bureau (CFPB), prohibits discrimination against a "covered employee" who, among other things, "provide[s] . . . information to [his or her] employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to" a violation of a law subject to the CFPB's jurisdiction. 12 U. S. C. §5567(a)(1). To qualify as a "covered employee," an individual need not provide information to the CFPB, or any other entity. See §5567(b) ("covered employee" means "any individual performing tasks related to the offering or provision of a consumer financial product or service").

"[W]hen Congress includes particular language in one section of a statute but omits it in another[,] . . . this Court presumes that Congress intended a difference in meaning." *Loughrin* v. *United States*, 573 U. S. ___, ___ (2014) (slip op., at 6) (internal quotation marks and alteration omitted). Congress placed a government-reporting requirement in §78u–6(h), but not elsewhere in the same

statute. Courts are not at liberty to dispense with the condition—tell the SEC—Congress imposed.

## B

Dodd-Frank's purpose and design corroborate our comprehension of §78u–6(h)'s reporting requirement. The "core objective" of Dodd-Frank's robust whistleblower program, as Somers acknowledges, Tr. of Oral Arg. 45, is "to motivate people who know of securities law violations to *tell the SEC*," S. Rep. No. 111–176, at 38 (emphasis added). By enlisting whistleblowers to "assist the Government [in] identify[ing] and prosecut[ing] persons who have violated securities laws," Congress undertook to improve SEC enforcement and facilitate the Commission's "recover[y] [of] money for victims of financial fraud." *Id.,* at 110. To that end, §78u–6 provides substantial monetary rewards to whistleblowers who furnish actionable information to the SEC. See §78u–6(b).

Financial inducements alone, Congress recognized, may be insufficient to encourage certain employees, fearful of employer retaliation, to come forward with evidence of wrongdoing. Congress therefore complemented the Dodd-Frank monetary incentives for SEC reporting by heightening protection against retaliation. While Sarbanes-Oxley contains an administrative-exhaustion requirement, a 180-day administrative complaint-filing deadline, and a remedial scheme limited to actual damages, Dodd-Frank provides for immediate access to federal court, a generous statute of limitations (at least six years), and the opportunity to recover double backpay. See *supra,* at 5–6. Dodd-Frank's award program and anti-retaliation provision thus work synchronously to motivate individuals with knowledge of illegal activity to "tell the SEC." S. Rep. No. 111–176, at 38.

When enacting Sarbanes-Oxley's whistleblower regime, in comparison, Congress had a more far-reaching objec-

tive: It sought to disturb the "corporate code of silence" that "discourage[d] employees from reporting fraudulent behavior not only to the proper authorities, such as the FBI and the SEC, but even internally." *Lawson*, 571 U. S., at ___ (slip op., at 4) (internal quotation marks omitted). Accordingly, the Sarbanes-Oxley anti-retaliation provision covers employees who report fraud not only to the SEC, but also to any other federal agency, Congress, or an internal supervisor. See 18 U. S. C. §1514A(a)(1).

C

In sum, Dodd-Frank's text and purpose leave no doubt that the term "whistleblower" in §78u–6(h) carries the meaning set forth in the section's definitional provision. The disposition of this case is therefore evident: Somers did not provide information "to the Commission" before his termination, §78u–6(a)(6), so he did not qualify as a "whis-tleblower" at the time of the alleged retaliation. He is therefore ineligible to seek relief under §78u–6(h).

III

Somers and the Solicitor General tender a different view of Dodd-Frank's compass. The whistleblower definition, as they see it, applies only to the statute's award program, not to its anti-retaliation provision, and thus not, as the definition plainly states, throughout "this section," §78u–6(a). See Brief for Respondent 30; Brief for United States as *Amicus Curiae* 10–11. For purposes of the anti-retaliation provision alone, they urge us to construe the term "whistleblower" in its "ordinary sense," *i.e.,* without any SEC-reporting requirement. Brief for Respondent 18.

Doing so, Somers and the Solicitor General contend, would align with our precedent, specifically *Lawson* v. *Suwannee Fruit & S. S. Co.*, 336 U. S. 198 (1949), and *Utility Air Regulatory Group* v. *EPA*, 573 U. S. ___ (2014). In those decisions, we declined to apply a statutory defini-

tion that ostensibly governed where doing so would have been "incompatible with . . . Congress' regulatory scheme," *id.*, at \_\_\_ (slip op., at 18) (internal quotation marks omitted), or would have "destroy[ed] one of the [statute's] major purposes," *Suwannee Fruit*, 336 U. S., at 201.

This case is of a piece, Somers and the Solicitor General maintain. Applying the statutory definition here, they variously charge, would "create obvious incongruities," Brief for United States as *Amicus Curiae* 19 (internal quotation marks omitted), "produce anomalous results," *id.,* at 22, "vitiate much of the [statute's] protection," *id.,* at 20 (internal quotation marks omitted), and, as the Court of Appeals put it, narrow clause (iii) of §78u–6(h)(1)(A) "to the point of absurdity," Brief for Respondent 35 (quoting 850 F. 3d, at 1049). We next address these concerns and explain why they do not lead us to depart from the statutory text.

## A

It would gut "much of the protection afforded by" the third clause of §78u–6(h)(1)(a), Somers and the Solicitor General urge most strenuously, to apply the whistleblower definition to the anti-retaliation provision. Brief for United States as *Amicus Curiae* 20 (internal quotation marks omitted); Brief for Respondent 28–29. As earlier noted, see *supra,* at 4–5, clause (iii) prohibits retaliation against a "whistleblower" for "making disclosures" to various persons and entities, including *but not limited to* the SEC, to the extent those disclosures are "required or protected under" various laws other than Dodd-Frank. §78u–6(h)(1)(A)(iii). Applying the statutory definition of whistleblower, however, would limit clause (iii)'s protection to "only those individuals who report to the Commission." Brief for United States as *Amicus Curiae* 22.

The plain-text reading of the statute undoubtedly shields fewer individuals from retaliation than the alter-

native proffered by Somers and the Solicitor General.  But we do not agree that this consequence "vitiate[s]" clause (iii)'s protection, *id.*, at 20 (internal quotation marks omitted), or ranks as "absur[d]," Brief for Respondent 35 (internal quotation marks omitted).[6]  In fact, our reading leaves the third clause with "substantial meaning."  Brief for Petitioner 32.

With the statutory definition incorporated, clause (iii) protects a whistleblower who reports misconduct *both* to the SEC and to another entity, but suffers retaliation because of the latter, non-SEC, disclosure.  That would be so, for example, where the retaliating employer is unaware that the employee has alerted the SEC.  In such a case, without clause (iii), retaliation for internal reporting would not be reached by Dodd-Frank, for clause (i) applies only where the employer retaliates against the employee "because of" the SEC reporting.  §78u–6(h)(1)(A).  Moreover, even where the employer knows of the SEC reporting, the third clause may operate to dispel a proof problem: The employee can recover under the statute without having to demonstrate whether the retaliation was motivated by the internal report (thus yielding protection under clause (iii)) or by the SEC disclosure (thus gaining protection under clause (i)).

While the Solicitor General asserts that limiting the protections of clause (iii) to dual reporters would "shrink to insignificance the [clause's] ban on retaliation," Brief for United States as *Amicus Curiae* 22 (internal quotation marks omitted), he offers scant evidence to support that assertion.  Tugging in the opposite direction, he reports that approximately 80 percent of the whistleblowers who received awards in 2016 "reported internally before report-

––––––––––

[6]The Solicitor General, unlike Somers, acknowledges that it would not be absurd to apply the "whistleblower" definition to the anti-retaliation provision.  Tr. of Oral Arg. 52.

ing to the Commission." *Id.,* at 23. And Digital Realty cites real-world examples of dual reporters seeking Dodd-Frank or Sarbanes-Oxley recovery for alleged retaliation. See Brief for Petitioner 33, and n. 4 (collecting cases). Overlooked by Somers and the Solicitor General, in dual-reporting cases, retaliation not prompted by SEC disclosures (and thus unaddressed by clause (i)) is likely commonplace: The SEC is required to protect the identity of whistleblowers, see §78u–6(h)(2)(A), so employers will often be unaware that an employee has reported to the Commission. In any event, even if the number of individuals qualifying for protection under clause (iii) is relatively limited, "[i]t is our function to give the statute the effect its language suggests, however modest that may be." *Morrison* v. *National Australia Bank Ltd.*, 561 U. S. 247, 270 (2010).

B

Somers and the Solicitor General express concern that our reading would jettison protection for auditors, attorneys, and other employees subject to internal-reporting requirements. See Brief for Respondent 35; Brief for United States as *Amicus Curiae* 21. Sarbanes-Oxley, for example, requires auditors and attorneys to report certain information within the company before making disclosures externally. See 15 U. S. C. §§78j–1(b), 7245; 17 CFR §205.3. If the whistleblower definition applies, Somers and the Solicitor General fear, these professionals will be "le[ft] . . . vulnerable to discharge or other retaliatory action for complying with" their internal-reporting obligations. Brief for United States as *Amicus Curiae* 22 (internal quotation marks omitted).

Our reading shields employees in these circumstances, however, *as soon as they also provide relevant information to the Commission.* True, such employees will remain ineligible for Dodd-Frank's protection until they tell the

SEC, but this result is consistent with Congress' aim to encourage SEC disclosures. See S. Rep. No. 111–176, at 38; *supra,* at 3–4, 11. Somers worries that lawyers and auditors will face retaliation quickly, before they have a chance to report to the SEC. Brief for Respondent 35–36. But he offers nothing to show that Congress had this concern in mind when it enacted §78u–6(h). Indeed, Congress may well have considered adequate the safeguards already afforded by Sarbanes-Oxley, protections specifically designed to shield lawyers, accountants, and similar professionals. See *Lawson*, 571 U. S., at ___ (slip op., at 17).

C

Applying the whistleblower definition as written, Somers and the Solicitor General further protest, will create "an incredibly unusual statutory scheme": "[I]dentical misconduct"—*i.e.,* retaliating against an employee for internal reporting—will "go punished or not based on the happenstance of a separate report" to the SEC, of which the wrongdoer may "not even be aware." Brief for Respondent 37–38. See also Brief for United States as *Amicus Curiae* 24. The upshot, the Solicitor General warns, "would [be] substantially diminish[ed] Dodd-Fran[k] deterrent effect." *Ibid.*

Overlooked in this protest is Dodd-Frank's core objective: to prompt reporting to the SEC. *Supra,* at 3–4, 11. In view of that precise aim, it is understandable that the statute's retaliation protections, like its financial rewards, would be reserved for employees who have done what Dodd-Frank seeks to achieve, *i.e.,* they have placed information about unlawful activity before the Commission to aid its enforcement efforts.

D

Pointing to another purported anomaly attending the

reading we adopt today, the Solicitor General observes that neither the whistleblower definition nor §78u–6(h) contains any requirement of a "temporal or topical connection between the violation reported to the Commission and the internal disclosure for which the employee suffers retaliation." Brief for United States as *Amicus Curiae* 25. It is therefore possible, the Solicitor General posits, that "an employee who was fired for reporting accounting fraud to his supervisor in 2017 would have a cause of action under [§78u–6(h)] if he had reported an insider-trading violation by his previous employer to the Commission in 2012." *Ibid.* For its part, Digital Realty agrees that this scenario could arise, but does not see it as a cause for concern: "Congress," it states, "could reasonably have made the policy judgment that individuals who report securities-law violations to the SEC should receive broad protection over time against retaliation for a variety of disclosures." Reply Brief 11.

We need not dwell on the situation hypothesized by the Solicitor General, for it veers far from the case before us. We note, however, that the interpretation offered by Somers and the Solicitor General—*i.e.,* ignoring the statutory definition when construing the anti-retaliation provision—raises an even thornier question about the law's scope. Their view, which would not require an employee to provide information relating to a securities-law violation to the SEC, could afford Dodd-Frank protection to an employee who reports information bearing no relationship whatever to the securities laws. That prospect could be imagined based on the broad array of federal statutes and regulations cross-referenced by clause (iii) of the anti-retaliation provision. *E.g.,* 18 U. S. C. §1513(e) (criminalizing retaliation for "providing to a law enforcement officer any truthful information relating to the commission . . . of *any Federal offense*" (emphasis added)); see *supra,* at 5, and n. 2. For example, an employee fired for reporting a

coworker's drug dealing to the Federal Bureau of Investigation might be protected. Brief for Petitioner 38. It would make scant sense, however, to rank an FBI drug-trafficking informant a whistleblower under Dodd-Frank, a law concerned only with encouraging the reporting of "*securities* law violations." S. Rep. No. 111–176, at 38 (emphasis added).

### E

Finally, the interpretation we adopt, the Solicitor General adds, would undermine not just clause (iii) of §78u–6(h)(1)(A), but clause (ii) as well. Clause (ii) prohibits retaliation against a whistleblower for "initiating, testifying in, or assisting in any investigation or . . . action of the Commission based upon" information conveyed to the SEC by a whistleblower in accordance with the statute. §78u–6(h)(1)(A)(ii). If the whistleblower definition is applied to §78u–6(h), the Solicitor General states, "an employer could fire an employee for giving . . . testimony [to the SEC] if the employee had not previously reported to the Commission online or through the specified written form"—*i.e.,* the methods currently prescribed by Rule 21F–9 for a whistleblower to provide information to the Commission. Brief for United States as *Amicus Curiae* 20–21 (citing 17 CFR §240.21F–9(a)(1)–(2)).

But the statute expressly delegates authority to the SEC to establish the "manner" in which information may be provided to the Commission by a whistleblower. See §78u–6(a)(6). Nothing in today's opinion prevents the agency from enumerating additional means of SEC reporting—including through testimony protected by clause (ii).

### IV

For the foregoing reasons, we find the statute's definition of "whistleblower" clear and conclusive. Because "Congress has directly spoken to the precise question at

issue," *Chevron*, 467 U. S., at 842, we do not deference to the contrary view advanced by the SEC in Rule 21F–2. See 17 CFR §240.21F–2(b)(1); *supra,* at 6–7. The statute's unambiguous whistleblower definition, in short, precludes the Commission from more expansively interpreting that term. See *Burgess*, 553 U. S., at 130.

\*    \*    \*

The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

────────

No. 16–1276

────────

## DIGITAL REALTY TRUST, INC., PETITIONER *v.* PAUL SOMERS

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT*

[February 21, 2018]

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins, concurring.

I join the Court's opinion in full. I write separately only to note my disagreement with the suggestion in my colleague's concurrence that a Senate Report is not an appropriate source for this Court to consider when interpreting a statute.

Legislative history is of course not the law, but that does not mean it cannot aid us in our understanding of a law. Just as courts are capable of assessing the reliability and utility of evidence generally, they are capable of assessing the reliability and utility of legislative-history materials.

Committee reports, like the Senate Report the Court discusses here, see *ante,* at 3–4, 11–12, 16–18, are a particularly reliable source to which we can look to ensure our fidelity to Congress' intended meaning. See *Garcia* v. *United States*, 469 U. S. 70, 76 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation'" (quoting *Zuber* v. *Allen*, 396 U. S. 168, 186 (1969))). Bills presented to Congress for consideration are generally accompanied by a committee report. Such re-

ports are typically circulated at least two days before a bill is to be considered on the floor and provide Members of Congress and their staffs with information about "a bill's context, purposes, policy implications, and details," along with information on its supporters and opponents. R. Katzmann, Judging Statutes 20, and n. 62 (2014) (citing A. LaRue, Senate Manual Containing the Standing Rules, Orders, Laws, and Resolutions Affecting the Business of the United States Senate, S. Doc. No. 107–1, p. 17 (2001)). These materials "have long been important means of informing the whole chamber about proposed legislation," Katzmann, Judging Statutes*,* at 19, a point Members themselves have emphasized over the years.\* It is thus no surprise that legislative staffers view committee and conference reports as the most reliable type of legislative history. See Gluck & Bressman, Statutory Interpretation From the Inside—An Empirical Study of Congressional Drafting, Delegation and the Canons: Part I, 65 Stan. L. Rev. 901, 977 (2013).

Legislative history can be particularly helpful when a

---

\*See, *e.g.,* Hearings on the Nomination of Judge Antonin Scalia, To Be Associate Justice of the Supreme Court of the United States before the Senate Committee on the Judiciary, 99th Cong., 2d Sess., 65–66 (1986) (Sen. Charles E. Grassley) ("[A]s one who has served in Congress for 12 years, legislative history is very important to those of us here who want further detailed expression of that legislative intent"); Mikva, Reading and Writing Statutes, 28 S. Tex. L. Rev. 181, 184 (1986) ("The committee report is the bone structure of the legislation. It is the road map that explains why things are in and things are out of the statute"); Brudney, Congressional Commentary on Judicial Interpretations of Statutes: Idle Chatter or Telling Response? 93 Mich. L. Rev. 1, 28 (1994) (compiling the views of former Members on "the central importance of committee reports to their own understanding of statutory text"). In fact, some Members "are more likely to vote . . . based on a reading of the legislative history than on a reading of the statute itself." Gluck & Bressman, Statutory Interpretation From the Inside—An Empirical Study of Congressional Drafting, Delegation and the Canons: Part I, 65 Stan. L. Rev. 901, 968 (2013).

statute is ambiguous or deals with especially complex matters. But even when, as here, a statute's meaning can clearly be discerned from its text, consulting reliable legislative history can still be useful, as it enables us to corroborate and fortify our understanding of the text. See, *e.g., Tapia* v. *United States*, 564 U. S. 319, 331–332 (2011); *Carr* v. *United States*, 560 U. S. 438, 457–458 (2010). Moreover, confirming our construction of a statute by considering reliable legislative history shows respect for and promotes comity with a coequal branch of Government. See Katzmann, Judging Statutes, at 35–36.

For these reasons, I do not think it wise for judges to close their eyes to reliable legislative history—and the realities of how Members of Congress create and enact laws—when it is available.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1276

_____

## DIGITAL REALTY TRUST, INC., PETITIONER _v._ PAUL SOMERS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[February 21, 2018]

JUSTICE THOMAS, with whom JUSTICE ALITO and JUSTICE GORSUCH join, concurring in part and concurring in the judgment.

I join the Court's opinion only to the extent it relies on the text of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), 124 Stat. 1376. The question in this case is whether the term "whistleblower" in Dodd-Frank's antiretaliation provision, 15 U. S. C. §78u–6(h)(1), includes a person who does not report information to the Securities and Exchange Commission. The answer is in the definitions section of the statute, which states that the term "whistleblower" means a person who provides "information relating to a violation of the securities laws to the Commission." §78u–6(a)(6). As the Court observes, this statutory definition "resolves the question before us." _Ante_, at 9. The Court goes on, however, to discuss the supposed "purpose" of the statute, which it primarily derives from a single Senate Report. See _ante_, at 3–4, 11–12, 16–18. Even assuming a majority of Congress read the Senate Report, agreed with it, and voted for Dodd-Frank with the same intent, "we are a government of laws, not of men, and are governed by what Congress enacted rather than by what it intended."\* _Lawson_ v.

_____

\*For what it is worth, I seriously doubt that a committee report is a

———————

"particularly reliable source" for discerning "Congress' intended meaning." *Ante*, at 1 (SOTOMAYOR, J., concurring). The following exchange on the Senate floor is telling:

"Mr. ARMSTRONG. Mr. President, will the Senator tell me whether or not he wrote the committee report?

"Mr. DOLE. Did I write the committee report?

"Mr. ARMSTRONG. Yes.

"Mr. DOLE. No; the Senator from Kansas did not write the committee report.

"Mr. ARMSTRONG. Did any Senator write the committee report?

"Mr. DOLE. I have to check.

"Mr. ARMSTRONG. Does the Senator know of any Senator who wrote the committee report?

"Mr. DOLE. I might be able to identify one, but I would have to search. I was here all during the time it was written, I might say, and worked carefully with the staff as they worked. . . .

"Mr. ARMSTRONG. Mr. President, has the Senator from Kansas, the chairman of the Finance Committee, read the committee report in its entirety?

"Mr. DOLE. I am working on it. It is not a bestseller, but I am working on it.

"Mr. ARMSTRONG. Mr. President, did members of the Finance Committee vote on the committee report?

"Mr. DOLE. No.

"Mr. ARMSTRONG. . . . The report itself is not considered by the Committee on Finance. It was not subject to amendment by the Committee on Finance. It is not subject to amendment now by the Senate. . . . If there were matter within this report which was disagreed to by the Senator from Colorado or even by a majority of all Senators, there would be no way for us to change the report. I could not offer an amendment tonight to amend the committee report. . . . [L]et me just make the point that this is not the law, it was not voted on, it is not subject to amendment, and we should discipline ourselves to the task of expressing congressional intent in the statute." *Hirschey* v. *FERC*, 777 F. 2d 1, 7–8, n. 1 (CADC 1985) (Scalia, J., concurring) (quoting 128 Cong. Rec. 16918–16919 (1982)). See also Kethledge, Ambiguities and Agency Cases: Reflections After (Almost) Ten Years on the Bench, 70 Vand. L. Rev. En Banc 315, 317–318 (2017) (describing his experience as a Senate staffer who drafted legislative history "like being a teenager at home while your parents are away for the weekend: there was no supervision. I was able to write more or less what I pleased. . . . [M]ost members of Congress . . . have no idea at all about what is in the legislative history for a particular bill").

*FMR LLC*, 571 U. S. 429, \_\_\_ (2014) (Scalia, J., concurring in part and concurring in judgment) (slip op., at 1).  And "it would be a strange canon of statutory construction that would require Congress to state in committee reports . . . that which is obvious on the face of a statute." *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 592 (1980).  For these reasons, I am unable to join the portions of the Court's opinion that venture beyond the statutory text.