Wallach, Circuit Judge, dissenting.
It is axiomatic that "the power which [C]ongress possess[es] to create [c]ourts of inferior jurisdiction, necessarily implies the power to limit the jurisdiction of those [c]ourts to particular objects." United States v. Hudson , 11 U.S. (7 Cranch) 32, 33, 3 L.Ed. 259 (1812) ; see Lockerty v. Phillips , 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943) (explaining that Congress may "with-hold[ ] jurisdiction from [lower courts] in the exact degrees and character which to Congress may seem *970 proper for the public good" (emphasis added) (internal quotation marks and citations omitted)). The statute is clear: Congress limited our subject-matter jurisdiction "to review the final determinations of the United States International Trade Commission [ ('ITC') ] ... made under [ 19 U.S.C. § 1337 (2012)[1] ]," 28 U.S.C. § 1295(a)(6) (2012) (emphasis added), by defining an ITC "final determination" as a determination made "under subsection (d), (e), (f), or (g) of [§ 1337 ]," 19 U.S.C. § 1337(c) (emphasis added).
Although I agree with the majority's conclusion that the ITC did not err in declining to institute an investigation into the complaint under § 1337 brought by Appellants-Petitioners Amarin Pharma, Inc. and Amarin Pharmaceuticals Ireland Ltd. (together, "Amarin"), see J.A. 4-114 (Complaint), I disagree with the majority's approach, for it fails to give due respect to Congress's choice to limit our appellate jurisdiction. As the ITC's decision not to institute was made pursuant to § 1337(b), I believe that we lack appellate jurisdiction; however, I would instead exercise mandamus jurisdiction and conclude that Amarin has not demonstrated that the "extraordinary remedy" of issuing a writ of mandamus is appropriate. Gulfstream Aerospace Corp. v. Mayacamas Corp. , 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). Because I would dismiss Amarin's appeal and deny its petition for a writ of mandamus, I respectfully dissent.
DISCUSSION
I. Congress Limited Our Appellate Jurisdiction
Congress conferred upon us exclusive jurisdiction "to review the final determinations of the [ITC] relating to unfair practices in import trade, made under [ § 1337 ]." 28 U.S.C. § 1295(a)(6). Relevant here, § 1337(c) employs the term "final determination" and states that "[a]ny person adversely affected by a final determination of the [ITC] under subsection (d), (e), (f), or (g) of [§ 1337 ] may appeal such determination ... to the United States Court of Appeals for the Federal Circuit." In interpreting these statutes, we have said that "[f]inal determinations appealable under § 1295(a)(6) are specified in § 1337(c)." Crucible Materials Corp. v. U.S. Int'l Trade Comm'n , 127 F.3d 1057, 1060 (Fed. Cir. 1997).
II. We Lack Appellate Jurisdiction to Review the ITC's Decision Not to Institute an Investigation
Amarin filed its Complaint, which alleges, inter alia, that Royal DSM NV et al. ("Intervenors") have "falsely labeled[ ] and/or promoted for use" synthetically produced omega-3 products ("the Accused Products"), labelled "as dietary supplements," even though they "are actually unapproved new drugs under the Federal Food, Drug and Cosmetic Act ('FDCA')," 21 U.S.C. §§ 301 et seq. (2012), thereby violating "Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) [ (2012) ], and the standards established by the FDCA," J.A. 9 (internal quotation marks omitted). The Commissioners of the ITC voted not to institute an investigation, see J.A. 681, and sent a letter to Amarin's counsel notifying it of that decision, J.A. 1-2; see 19 C.F.R. § 210.10(c) (2018) ("If the [ITC] determines not to institute an investigation on the basis of the complaint, the complaint shall be dismissed, and the complainant *971 and all proposed respondents will receive written notice of the [ITC]'s action and the reason(s) therefor."). The ITC stated it "has determined not to institute an investigation based on the [C]omplaint ... and has dismissed the [C]omplaint." J.A. 1. According to the ITC, the "[C]omplaint does not allege an unfair method of competition or an unfair act cognizable under ... § 1337(a)(1)(A), as required by the statute and the [ITC]'s rules." J.A. 1. The ITC reasoned "that the Lanham Act allegations in this case are precluded by the [FDCA]," and that "the Food and Drug Administration [ ('FDA') ] is charged with the administration of the FDCA." J.A. 1.
The ITC's Decision Not to Institute is not an appealable final determination. An appealable final determination is an ITC determination made "under subsection (d), (e), (f), or (g) of [§ 1337 ]." 19 U.S.C. § 1337(c). Subsections (d)-(g) pertain to determinations on exclusion orders, see id. § 1337(d) - (e), (g), and cease-and-desist orders, see id. § 1337(f) - (g).[2] Amarin contends that the ITC's Decision Not to Institute is a final determination under either § 1337(d) or (f). See Appellants' Br. 20; see Oral Arg. at 1:37-55, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1247.mp3 (disclaiming reliance on § 1337(e) or (g) ). Each subsection contemplates determinations made by the ITC post-initiation of an investigation. Subsection (d) explicitly provides that the ITC's determination to exclude articles will be made "as a result of an investigation." 19 U.S.C. § 1337(d)(1) (emphasis added); see id. § 1337(c) (directing that a "determination under subsection (d) or (e) ... shall be made on the record after notice and opportunity for a hearing"). Subsection (f) sets forth that the ITC's determination to issue a cease-and-desist order is "[i]n addition to, or in lieu of, taking action" pursuant to other statutory provisions that involve an initiated investigation, i.e., taking action "under subsection (d)," which involves a completed investigation, "or [subsection] (e)," id. § 1337(f)(1), which covers the ITC's determination to exclude articles made "during the course of an investigation," id. § 1337(e)(1).
Here, the ITC neither initiated an investigation, decided whether a violation of § 1337 occurred, nor determined whether to issue an exclusion or cease-and-desist order. See J.A. 1-2. In Block v. United States International Trade Commission , we held that the "ITC's decision to terminate its investigation as 'abated' [was not] an appealable 'final determination.' " 777 F.2d 1568, 1570 (Fed. Cir. 1985) ; see id. at 1571. The ITC terminated the investigation because, following the U.S. Patent and Trademark Office's reexamination relating to an allegedly-infringed patent, the reexamined claims were substantively changed. Id. at 1570. There, the ITC's termination decision "did not rule on the merits," so its "action could not intrinsically be a final determination within the meaning of ... § 1337(c) because it was not a decision to exclude or refuse to exclude articles from entry under ... § 1337(d), (e), or (f)." Id. at 1571 (emphasis added). Similarly, the Decision Not to Institute did not render a decision on whether to exclude the allegedly mislabeled products or issue a cease-and-desist order. See J.A. 1-2. The ITC refused institution of an investigation and dismissed the Complaint, without reaching the requested relief. See J.A. 1-2.
Rather than placing the ITC's authority to investigate in subsections (d), (e), (f), or (g), of § 1337, Congress located that authority in subsection (b). Section 1337(b) authorizes the ITC to "investigate any alleged *972 violation of [ § 1337 ] on complaint under oath or upon its initiative," 19 U.S.C. § 1337(b)(1), and contemplates instances where the ITC "shall terminate, or not institute , any investigation" or "suspend its investigation," id. § 1337(b)(3) (emphasis added); see VastFame Camera, Ltd. v. Int'l Trade Comm'n , 386 F.3d 1108, 1112, 1113 (Fed. Cir. 2004) (explaining that § 1337(b)"gives the [ITC] general authority to investigate violations of the statute"). Congress indicated its intent to make § 1337(b) determinations, such as the Decision Not to Institute, non-appealable through its exclusion of subsection (b) from the list of final determinations in § 1337(c). See Marx v. Gen. Revenue Corp. , 568 U.S. 371, 392, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013) ("[T]he expressio unius, exclusio alterius canon, ... instructs that when Congress includes one possibility in a statute, it excludes another by implication."); cf. United States v. Erika , 456 U.S. 201, 207, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) ("In the context of the statute's precisely drawn provisions , this omission provides persuasive evidence that Congress deliberately intended to foreclose further review of such claims." (emphasis added)).[3] Had Congress intended to make non-institution decisions appealable, it merely needed to include them in its list of determinations that would be considered final in § 1337(c). Given that Congress decided not to adopt this "obvious alternative," "the natural implication is that [it] did not intend" for such decisions under § 1337(b) to be appealable. Lozano v. Montoya Alvarez , 572 U.S. 1, 16, 134 S.Ct. 1224, 188 L.Ed.2d 200 (2014). "We cannot revisit that choice." Id.
The statutory context further reveals that Congress did not contemplate appealability of an ITC non-institution decision. See Digital Realty Tr., Inc. v. Somers , --- U.S. ----, 138 S.Ct. 767, 777, 200 L.Ed.2d 15 (2018) (acknowledging that courts may rely upon a statute's "purpose and design" to "corroborate" their understanding of the statutory text); Block v. Cmty. Nutrition Inst. , 467 U.S. 340, 349, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) ("[T]he presumption favoring judicial review of administrative action may be overcome by inferences of intent drawn from the statutory scheme as a whole."). In fact, § 1337(b)(1) covers the procedures for commencing and conducting an investigation, and details that, "[u]pon commencing any such investigation, the [ITC] shall publish notice thereof in the Federal Register." Moreover, "the [ITC] shall, within 45 days after an investigation is initiated , establish a target date for its final determination ." 19 U.S.C. § 1337(b)(1) (emphases added). Through this language, Congress established two separate types of ITC determinations-a decision whether to institute an investigation and, separately, a final determination, i.e., those made under subsections (d), (e), (f), or (g)-and clarified that a final determination is rendered after an institution decision. See id.
Similarly, § 1337(j) provides that, when the ITC "determines that there is a violation *973 of [ § 1337 ] ... or ... [ha]s reason to believe that there is such a violation," it shall, inter alia, "transmit to the President a copy of such determination and the action taken under subsection (d), (e), (f), (g), or (i)[4 ] of [ § 1337 ]." Id. § 1337(j)(1), (j)(1)(B). The President then has the option "for policy reasons" to "disapprove[ of] such determination" within sixty days, id. § 1337(j)(2), and, if not disapproved or if approved, the "determination shall become final ," id. § 1337(j)(4) (emphasis added). Such determinations that are submitted to the President become final well after an investigation is complete. See id. § 1337(b), (j). Tellingly, Congress has conferred jurisdiction explicitly over certain administrative decisions not to institute an investigation, elsewhere in the Tariff Act. Congress explained that "an interested party ... may commence an action in the United States Court of International Trade [ ('CIT') ]" challenging "a determination by [the U.S. Department of Commerce] ... not to initiate an investigation " related to antidumping and countervailing duty proceedings. 19 U.S.C. § 1516a(a)(1), (a)(1)(A) (emphasis added); see 28 U.S.C. § 1581(c) (conferring the CIT with "exclusive jurisdiction" over actions commenced pursuant to § 1516a ). Congress did not confer such jurisdiction in § 1337.
The legislative history does not support the majority's conclusion. See Thunder Basin Coal Co. v. Reich , 510 U.S. 200, 207, 209-12, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (consulting legislative history for statutory interpretation). Although the original version of § 1337 did not define an ITC final determination by reference to specific subsections, see Tariff Act § 337, 46 Stat. at 703-04, Congress amended § 1337(c) and added that "[a]ny person adversely affected by a final determination of the [ITC] under subsection (d) or (e) may appeal such determination," Trade Act of 1974, Pub. L. No. 93-618, § 341(a), 88 Stat. 1978, 2054.[5] When Congress inserted this language, the Senate Finance Committee recognized it was "extend[ing] the right to judicial review of final [ITC] determinations." S. Rep. No. 93-1298, at 197 (1974) (Conf. Rep.). It provided that "[b]y final determination , as used in this section, the Committee means a [n ITC ] determination which has been referred to the President under [the predecessor to current § 1337(j) ], and has been approved by the President or has not been disapproved ... after referral of the determination." Id. (emphases added). This appears to be the only time in the legislative history Congress expounded its understanding of the term final determination in § 1337. Nowhere does Congress equate a non-institution decision to a final determination. See id.
While this court has acknowledged that § 1337"provides for judicial review of both positive and negative determinations," we should be careful not to expand the scope of the term final determination to include determinations beyond those contemplated by Congress. Amgen, Inc. v. U.S. Int'l Trade Comm'n , 902 F.2d 1532, 1535 (Fed. Cir. 1990) (footnote omitted); see Imp. Motors, Ltd. v. U.S. Int'l Trade Comm'n , 530 F.2d 940, 945 (CCPA 1976) (explaining that § 1337(c)"indicate[s] an intent to provide appeal of such an unfavorable *974 decision"). I find no support for the proposition that Congress intended a non-institution decision to be an appealable final determination. Accordingly, I do not believe that the ITC's Decision Not to Institute is a final determination under § 1337(c).
Apparently recognizing that it is not a final determination as defined by § 1337(c), the majority sweeps the ITC's Decision Not to Institute under our jurisdiction by holding that it is intrinsically a final determination, based on Amgen . See Maj. Op. 962-64. In Amgen , the ITC dismissed a complaint for lack of subject-matter jurisdiction because the patent-at-issue did "not contain any process patent claims," which the ITC considered "a jurisdictional prerequisite." 902 F.2d at 1535. We exercised appellate jurisdiction and vacated and remanded the ITC's dismissal, determining that the dismissal "should have been phrased as a dismissal on the merits." Id. at 1537.[6] There, the ITC's determination that the patent's claims "do not, in fact, cover a process [as required by statute] ... clearly reache[d] the merits of [the] complaint and determinatively decide[d the complainant's] right to proceed in a [§] 1337 action." Id . at 1535. The court recognized that "the jurisdictional requirements of [§] 1337 mesh with the factual requirements necessary to prevail on the merits," and explained that "the fact that [the complainant] was later unable to sustain these allegations [regarding whether its patent covered a process] is not material to the issue of jurisdiction ." Id. at 1536.
The majority's reliance on Amgen is misplaced. Amgen did not involve a determination made pursuant to § 1337(b) ; instead, the ITC in that case "conduct[ed] a full investigation" before dismissing the complaint. Id. at 1534. The majority dismisses this fact by stating "the court's reasoning in [ Amgen ] was not based on that procedural detail" but "focused on the operative effect of the [ITC] decision." Maj. Op. 964. That is hardly a procedural detail; this fact, coupled with § 1337(c)'s precise definition of a final determination, fundamentally limits Amgen 's holding. See 19 U.S.C. § 1337(c). The majority criticizes "this approach [as] elevat[ing] form over substance." Maj. Op. 964. There is a "general principle that agencies with statutory enforcement responsibilities enjoy broad discretion in allocating investigative and enforcement resources." Torrington Co. v. United States , 68 F.3d 1347, 1351 (Fed. Cir. 1995). The majority fails to give due respect to Congress's choice, thereby placing "this court in the position of routinely second-guessing the [ITC]'s decisions [on non-institution] ... , a role for which [we] are ill-suited and one that could be quite disruptive of [the ITC]'s effort to establish enforcement priorities." Id.
In addition, Amgen determined that the ITC improperly characterized its dismissal *975 as jurisdictional on the process patent claim issue, but we explained that the substance of its analysis meant it "should have dismissed on the merits." 902 F.2d at 1536 (footnote omitted). By contrast, the ITC's two-page Decision Not to Institute, which dismissed on jurisdictional grounds, does not purport to, nor in fact does, reach the merits of Amarin's Complaint; rather, it recognizes that the FDCA vests the FDA with primacy over such claims. See J.A. 1-2. Amarin is not barred from seeking relief; for instance, the ITC did not find that Amarin failed to "pro[ve] ... an element of the cause of action," such as finding the Intervenors did not falsely label their accused products and therefore did not commit an unfair act under § 1337(a). Engage Learning, Inc. v. Salazar , 660 F.3d 1346, 1354 (Fed. Cir. 2011) (citation omitted); see Block , 777 F.2d at 1571 (dismissing for lack of appellate jurisdiction where the ITC did not make a "finding as to whether ... § 1337 was violated"); J.A. 1-2. As in Block , the ITC's Decision Not to Institute is not "the equivalent of a final determination," as it was "without prejudice," because it did not make findings on the merits, and Amarin is "free to" file another complaint. 777 F.2d at 1571 ; see id. (rejecting the argument that the ITC's "order ... involved the denial of substantive rights"); Amgen , 902 F.2d at 1535 (distinguishing Block and recognizing there that the court "found the lack of any findings by the [ITC] to be critical; nothing in the termination [o]rder prejudiced the [ITC] or any private party in a future proceeding" (emphasis added) (citation omitted)). Indeed, the ITC represents, on appeal, that its dismissal is "without prejudice." Appellee's Br. 57. The ITC notes that "Amarin is free to file a new complaint once the FDA issues sufficient guidance with respect to the [A]ccused [P]roducts such that the [ITC] is not required to interpret the FDCA in the first instance and Amarin's claims are otherwise no longer precluded by the FDCA." Id. at 58 (footnote omitted); see Imp. Motors , 530 F.2d at 947 & n.13 (relying on an ITC representation made on appeal regarding whether a party could participate in the second stage of a § 1337 investigation). The majority implicitly recognizes that Amarin may eventually re-file. See Maj. Op. 963-64 ("[A]s long as Amarin's [C]omplaint is based on proving violations of the FDCA (at least where the FDA has not provided guidance as to whether the articles violate the FDCA ), Amarin's claims will be precluded." (emphasis added)).[7] Accordingly, I conclude that the ITC's Decision Not to Institute is not an appealable final determination within the meaning of § 1337(c).
III. We Should Exercise Mandamus Jurisdiction and Deny Amarin's Petition
Intervenors argue that we lack mandamus jurisdiction to review Amarin's Petition, see Intervenors' Br. 34-37, because we may not "use mandamus to obtain jurisdiction over agency decisions otherwise beyond [our] reach," id. at 36. Amarin and the ITC contend that we have mandamus jurisdiction. See Appellants' Br. 25-27; Appellee's Br. 51-52. I agree with Amarin and the ITC.
Pursuant to the All Writs Act, we "may issue all writs necessary or appropriate in aid of" our jurisdiction. 28 U.S.C. § 1651(a). Therefore, our "authority to issue writs of mandamus is restricted by *976 statute to those cases in which the writ is in aid of [appellate] jurisdiction." Roche v. Evaporated Milk Ass'n , 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). "The authority is not limited to issuance of the writ where the court already had jurisdiction on appeal; rather, the authority extends to those cases which are within its appellate jurisdiction although no appeal has been perfected." In re Princo Corp. , 478 F.3d 1345, 1351 (Fed. Cir. 2007) (internal quotation marks and citation omitted).
I believe we have jurisdiction to consider Amarin's Petition, which seeks mandamus relief. Section 1295(a) gives us "exclusive jurisdiction ... (6) to review the final determinations of the [ITC] ... made under [ § 1337 ]." See 19 U.S.C. § 1337(c) (defining "a final determination"). If the ITC were to erroneously refuse to initiate an investigation, we might consequently be divested of appellate jurisdiction over a matter which we should have had jurisdiction following ITC's institution and final determination. See id. ; 28 U.S.C. § 1295(a)(6). Review over such matters is necessary as an exercise of "limited judicial power to preserve th[is] court's jurisdiction." FTC v. Dean Foods Co., 384 U.S. 597, 604, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). Amarin's Petition asks whether the ITC is required to initiate an investigation under the governing statute. See, e.g. , Appellants' Br. 38 ("The Tariff Act imposes a non-discretionary duty on the [ITC] to institute investigations into alleged unfair trade practices and methods of competition."); see id. at 39 (relying on § 1337(b) ). Accordingly, we retain mandamus jurisdiction, which, under these circumstances, is "necessary to protect [our] prospective jurisdiction." Telecomms. Research & Action Ctr. v. FCC , 750 F.2d 70, 76 (D.C. Cir. 1984) ; see, e.g., Syntex , 659 F.2d at 1041 (considering, but ultimately denying, a petition for writ of mandamus where petitioner sought "to compel [the] ITC to institute an investigation"); cf. In re Cypress Semiconductor Corp. , 321 F. App'x 964, 965 (Fed. Cir. 2009) (exercising jurisdiction over, but ultimately denying, a petition for writ of mandamus seeking to compel the ITC "to halt its investigation").
Heckler v. Chaney does not require a different result. See 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) ; see also Intervenors' Br. 26-27, 35 (citing Heckler to argue the ITC's Decision Not to Institute is immune from judicial review). Although Heckler held that "an agency's decision not to take enforcement action should be presumed immune from judicial review," 470 U.S. at 832, 105 S.Ct. 1649, the Supreme Court did not address "a refusal by the agency to institute proceedings based solely on the belief that it lacks jurisdiction," id. at 833 n.4, 105 S.Ct. 1649, or a "decision [that] is predicated solely on the agency's interpretation of a statute," Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock , 783 F.2d 237, 245 n.10 (D.C. Cir. 1986). However, as discussed above, the Petition challenges the ITC's interpretation of § 1337 and the FDCA, see Appellants' Br. 38-39, 50, and the ITC refused to institute because it lacked jurisdiction over Amarin's Complaint, see J.A. 1. Thus, I would exercise mandamus jurisdiction over Amarin's Petition, but agree with the majority's conclusion that Amarin has failed to demonstrate that it is entitled to the extraordinary relief of mandamus. See Maj. Op. 964 n.3, 964-69.[8]
*977 CONCLUSION
Through § 1337(c), Congress expressly defined a final determination of the ITC and thereby precisely drew the limits of our appellate jurisdiction. The majority disregards the text of the statute and Congress's intent by holding that a § 1337(b) non-institution determination is appealable, even though Congress expressly defined a final determination as one made under § 1337(d) - (g). Because I believe we must follow Congress's directive, I respectfully dissent.

Section 1337 addresses, inter alia, "[u]nfair methods of competition and unfair acts in the importation of articles ... into the United States." 19 U.S.C. § 1337(a)(1)(A). Section 1337 is part of the Tariff Act of 1930 ("Tariff Act"). See Pub. L. No. 71-361, § 337, 46 Stat. 590, 703-04 (codified at 19 U.S.C. §§ 1304 et seq. ).

Section 1337(g) governs determinations rendered pursuant to a default and thereby relates to both exclusion and cease-and-desist orders. See 19 U.S.C. § 1337(g)(1)-(2).

Case law, while not expressly deciding the issue, supports this conclusion. See BASR P'ship v. United States , 795 F.3d 1338, 1342 (Fed. Cir. 2015) (consulting case law to construe a statute). In Syntex Agribusiness, Inc. v. United States International Trade Commission , the ITC decided not to institute an investigation pursuant to § 1337 and accordingly dismissed a complaint. See 659 F.2d 1038, 1040 (CCPA 1981). The complainant first petitioned our predecessor court for a writ of mandamus based on the ITC's refusal to investigate and later filed an appeal from the ITC's decision. Id. at 1041. Our predecessor court, by separate order, "dismissed [the complainant's] ... appeal on the ground that there had been no final determination by [the] ITC, which is essential for jurisdiction of the court." Id. (emphases added).

Section 1337(i) authorizes the ITC, "[i]n addition to taking action under subsection (d)," to "issue an order providing that any article imported in violation of the provisions of [§ 1337 ] be seized and forfeited to the United States" in certain situations.

Congress later amended this language to include additional subsections under the definition of an ITC final determination. See, e.g. , Trade Agreements Act of 1979, Pub. L. No. 96-39, § 1105(c), 93 Stat. 144, 311 (adding subsection (f)).

Amgen 's statement that "when a decision is intrinsically a final determination, i.e., a determination on the merits, then that decision is appealable under [§] 1337(c)," traces back to our predecessor court's decision in Import Motors . Amgen , 902 F.2d at 1535 (emphasis omitted) (citing, inter alia, 530 F.2d at 944 ). Even under this interpretation of "final determination," the ITC's determination must be made "under subsection (d), (e), (f), or (g)" because the statutory language cabins the types of final determinations that are appealable. 19 U.S.C. § 1337(c) ; see Import Motors , 530 F.2d at 944 (recounting that an earlier version of § 1337, "[s]trictly interpreted[,] ... refers to a final administrative decision on the merits, excluding or refusing to exclude articles from entry under subsection (d) or (e)"). Amgen does not expand our jurisdiction to determinations made under different subsections of § 1337, nor could it. See Lozano , 572 U.S. at 16, 134 S.Ct. 1224 (recognizing that we are bound by Congress's choice).

Because the dismissal is without prejudice and Amarin can re-file, the majority need not be concerned that the ITC would unnecessarily be required "to formally institute ... just long enough ... to issue the same dismissal order it already issued in this case." Maj. Op. 964.

To the extent there remains a question about whether we have mandamus jurisdiction, the ITC's failure to institute an investigation would not evade judicial review. Instead, the Administrative Procedure Act ("APA"), 60 Stat. 237 (1946) (codified in scattered sections of 5 U.S.C. (2012)), provides that "[a] person ... adversely affected" by "final agency action[s] for which there is no other adequate remedy in a court" may seek review of that action, 5 U.S.C. §§ 702, 704. Under this type of action, a reviewing court may "compel agency action unlawfully withheld," id. § 706(1), for example the ITC's failure to institute an investigation. Therefore, if appellate and mandamus jurisdiction are lacking in this court, Amarin may be able to raise an APA challenge in district court. See Norton v. S. Utah Wilderness All. , 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (holding "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take "). It is useful to note that § 1337(c) expressly contemplates APA review of certain types of determinations. See 19 U.S.C. § 1337(c) (stating that ITC "determinations under subsections (d), (e), (f), and (g) ... with respect to its findings on the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the amount and nature of bond, or the appropriate remedy shall be reviewable in accordance with [§] 706" and "[d]eterminations ... under subsections (e), (f), and (j) ... with respect to forfeiture of bonds and under subsection (h) ... with respect to the imposition of sanctions for abuse of discovery or abuse of process shall also be reviewable in accordance with [§] 706").