# United States Court of Appeals for the Federal Circuit

---

**MAYBORN GROUP, LTD., MAYBORN USA, INC.,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

---

2019-2077

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1092.

---

Decided: July 16, 2020

---

JOHN STEPHEN GOETZ, Fish & Richardson P.C., New York, NY, for appellants.

ROBERT JOHN NEEDHAM, Office of General Counsel, United States International Trade Commission, Washington, DC, for appellee. Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON.

---

Before LOURIE, LINN, and WALLACH, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Mayborn Group, Ltd., and Mayborn USA, Inc., (collectively, "Mayborn") appeal from a decision of the United States International Trade Commission (the "Commission"), denying its petition for rescission of a general exclusion order prohibiting importation of products that infringe U.S. Patent 8,028,850 (the "'850 patent"). *Certain Self-Anchoring Beverage Containers*, Inv. No. 337-TA-1092, USITC Pub. 4984, 2019 WL 2174055, at *1 (May 17, 2019) (Rescission Petition) ("*Decision*"). Because the Commission did not err in denying the petition, we affirm.

BACKGROUND

The Complainants own the '850 patent, which discloses a self-anchoring beverage container that prevents spills by anchoring the container to a surface by means of a "flexible nonporous base member adapted to seal to a reference surface." '850 patent, Abstract. The seal is broken when the handle is lifted, and a user can move the container normally. Figure 1 illustrates an embodiment of the invention:



FIG. 1

J.A. 1338. As the details of the claims are not material to this decision, we omit them here.

In 2017, Alfay Designs, Inc., Mighty Mug, Inc., and Harry Zimmerman (the "Complainants"), filed a complaint at the Commission against several respondents, not

including Mayborn.  The complaint alleged infringement of the '850 patent, among others, and sought a general exclusion order ("GEO") barring importation of infringing goods by any party.

The Commission instituted an investigation, and the administrative law judge initially determined that the two remaining respondents—those with whom the Complainants had not settled—were in default and infringed claim 1 of the '850 patent.  *Certain Self-Anchoring Beverage Containers*, Inv. No. 337-TA-1092, USITC Pub. 4984, 2018 WL 4357626, at *2, *8–10 (Aug. 27, 2018) (Initial).  The defaulting respondents did not raise any invalidity challenge.  The ALJ also recommended that the Commission grant a GEO because it was "difficult to gain information about the entities selling infringing self-anchoring beverage containers," and numerous entities were importing self-anchoring beverage containers, making it "nearly impossible to identify the sources of the[] products."  *Id.* at *12.  The Commission concluded that the ALJ's finding of infringement was correct and issued the GEO.  *Certain Self-Anchoring Beverage Containers*, Inv. No. 337-TA-1092, USITC Pub. 4984, 2018 WL 6716888, at *3 (Dec. 18, 2018) (Final).

The Complainants notified Mayborn of the Commission's then-ongoing investigation in October 2018.  Mayborn took no action during the course of the proceedings.  In early 2019, the Complainants notified Mayborn and its retail partners that Mayborn's products infringed the '850 patent in violation of the GEO.  The Complainants also intimated that they were "working with special agents from [Customs & Border Protection ("CBP")] in the enforcement of the [GEO] and in the identification of persons who are evading or violating the GEO."  J.A. 1857–58.

In response, Mayborn petitioned the Commission to rescind its GEO pursuant to its power under 19 U.S.C. § 1337(k)(1), which allows the Commission to rescind or modify an order if "the conditions which led to such

exclusion from entry or order no longer exist." Mayborn argued that this requirement was satisfied because it contends claim 1 of the '850 patent is invalid under 35 U.S.C. §§ 102, 103.

The Commission denied Mayborn's petition, holding that a petitioner's asserted discovery of invalidating prior art after the issuance of a GEO is not a changed condition under § 1337(k)(1). *Decision*, 2019 WL 2174055, at *2.

This appeal, challenging the denial of the petition, followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(6).

## DISCUSSION

Our review of the Commission's final determination of a Section 337 violation is governed by the standards of the Administrative Procedure Act. 19 U.S.C. § 1337(c); *Ajinomoto Co. v. Int'l Trade Comm'n*, 597 F.3d 1267, 1272 (Fed. Cir. 2010). Under 5 U.S.C. § 706, we review the Commission's legal determinations *de novo* and its factual findings for substantial evidence. *Converse, Inc. v. Int'l Trade Comm'n*, 909 F.3d 1110, 1115 (Fed. Cir. 2018) (citing *Cisco Sys., Inc. v. Int'l Trade Comm'n*, 873 F.3d 1354, 1360–61 (Fed. Cir. 2017)). Statutory interpretation is a question of law, generally reviewed *de novo*, *Power Integrations, Inc. v. Semiconductor Components Indus., LLC*, 926 F.3d 1306, 1313–14 (Fed. Cir. 2019) (citing *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016)), but we review the Commission's interpretation of § 1337 under the *Chevron* framework, *Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1345–46 (Fed. Cir. 2015) (en banc).

Mayborn argues that the Commission erred in rejecting its petition for rescission, and the Commission contends that Mayborn lacks standing to appeal the Commission's denial of its petition. We first address the Commission's argument.

## I. Standing

The Commission asserts that Mayborn lacks standing to appeal from the Commission's decision because Mayborn continues to import the accused products and thus lacks the requisite injury. In the Commission's view, Mayborn's evidence of injury pertains to actions of the Complainants—insofar as they have threatened to enforce the GEO against Mayborn and its retail partners—and has nothing to do with the Commission or its decision not to rescind the GEO.

Mayborn responds that it has been injured by the Complainants' efforts to assert the GEO, specifically by losing revenue while retailers suspended sales of its products. It further maintains that the Complainants' threat to seek enforcement of the GEO at the Commission creates a harm that is both imminent and real.

We agree with Mayborn that it has standing to appeal. "[A]ny person" may petition the Commission for rescission or modification of an exclusion order, subject to certain conditions. 19 C.F.R. § 210.76(a)(1). Nonetheless, a party seeking judicial review of a Commission determination must establish that it presents a case or controversy for which the federal courts have jurisdiction under Article III of the United States Constitution. *See Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1171 (Fed. Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). A party has Article III standing to appeal from a decision of an administrative agency when it has: (1) suffered a particularized, concrete injury in fact that is (2) fairly traceable to the challenged conduct of the defendant and is (3) likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547; *Consumer Watchdog v. Wis. Alumni Research Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014).

Mayborn has shown here that it satisfies these requirements and thus has Article III standing to maintain its

appeal.  First, Mayborn has shown that it has suffered an injury in fact as a result of the GEO.  Mayborn imports products that potentially infringe the '850 patent and therefore violate the GEO.  As an initial matter, and contrary to the Commission's arguments, it is unnecessary for the Commission to have already barred importation of Mayborn's products for Mayborn to have standing to appeal the Commission's decision.  *Cf. JTEKT Corp. v. GKN Automotive LTD.*, 898 F.3d 1217, 1220 (Fed. Cir. 2018) (holding that an *inter partes* review petitioner may appeal the Board's decision on showing "that it is engaged or will likely engage 'in an activity that would give rise to a possible infringement suit'" (quoting *Consumer Watchdog*, 753 F.3d at 1262) (alteration omitted)).

As the Commission acknowledges, Commission Br. 7, 17, CBP may at any moment determine that Mayborn's products violate the GEO and halt their importation. § 1337(d)(1).  Mayborn understandably sees this, or an enforcement action by the Commission, as a real threat to its business.  *VastFame Camera, Ltd. v. Int'l Trade Comm'n*, 386 F.3d 1108, 1113, 1116 (Fed. Cir. 2004) (permitting the Commission to conduct enforcement proceedings).  The threat of injury is not merely conjectural, as Mayborn has lost sales and incurred costs stemming from the Complainants' threats to assert the GEO, with attendant reputational injury, market share loss, and damage to Mayborn's brand and its relationships with retailers.  Mayborn Opening Br. 13–17; Commission Br. 17; *cf. E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996, 1005 (Fed. Cir. 2018).  Thus, given the strong possibility the Commission or CBP might act to enforce the GEO at any time and Complainants' ongoing efforts to assert the GEO against Mayborn, Mayborn has alleged that the GEO has injured it in a "particularized" and "concrete" manner.

The Commission's chief argument is that this injury is not traceable to the Commission but instead to the Complainants.  The Commission adds that the Complainants'

views concerning whether Mayborn's products violate the GEO are irrelevant, as it is CBP and the Commission that decide whether to exclude specific products under a GEO.

We disagree with the Commission on this point. Mayborn's injuries stem from its risk of infringing the '850 patent, the consequences of which are heightened by the existence of the GEO. *See* 19 C.F.R. § 12.39(b)(1) (the Commission "may direct" CBP to exclude products "violating or suspected of violating section 337"). The Complainants may have brought the GEO to the attention of Mayborn and its commercial partners, but it is the Commission that has issued the GEO, and it retains the ability to enforce, modify, or rescind it. *See* 19 U.S.C. § 1337(k)(1). Thus, Mayborn's injuries may be fairly traced to the conduct of the Commission.

Finally, Mayborn's injuries are likely redressable. The relief Mayborn seeks—an invalidity judgment and rescission of the GEO—would remove the threat of enforcement against Mayborn by CBP or in further proceedings at the Commission. We therefore conclude that Mayborn has Article III standing to appeal from the Commission's decision.

## II. Merits

Mayborn argues that the Commission erred in holding that an invalidity challenge is not a proper basis for a petition for rescission or modification of an exclusion order under § 1337(k)(1). Mayborn also asserts that the Commission failed to heed its own regulation, 19 C.F.R. § 210.76, by not considering the merits of its petition, and that the public interest lies in resolving patent validity.

The Commission responds that Mayborn's invalidity challenge is not a changed condition under § 1337(k)(1)—unlike a subsequent final judgment of invalidity or license agreement between the affected parties—and the Commission therefore had no obligation to consider the substance of Mayborn's petition. The Commission also maintains

that it lacks statutory authority to consider an invalidity challenge outside of an investigation or enforcement proceeding, regardless of Mayborn's insistence that the public interest generally lies in doing so.

Patent invalidity is an affirmative defense to an action for infringement in district court or before the Commission. 35 U.S.C. § 282(b); *see Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1359 (Fed. Cir. 2019) (citing *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1062 (Fed. Cir. 2017)). All factual propositions and inferences underlying an invalidity defense must be proven by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

But we agree with the Commission and conclude that Mayborn's invalidity challenge is not a permissible basis for it to petition for rescission or modification of the GEO. The Commission may only act pursuant to powers granted to it by Congress. *See Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1355 (Fed. Cir. 2008) ("The ITC is a creature of statute, and must find authority for its actions in its enabling statute."). Under § 1337(b), the Commission is empowered to investigate violations of § 1337(a), which prohibits, among other things, "the importation into the United States, the sale for importation, or the sale within the United States after importation" of articles that "infringe a valid and enforceable United States patent." The Commission is also permitted under § 1337(b) to conduct proceedings to enforce an existing exclusion order. *VastFame*, 386 F.3d at 1113. The Commission may also rescind or modify an exclusion order when "the conditions which led to such exclusion . . . no longer exist," or when a party previously adjudged in violation of § 1337(a) petitions for a "determination that the petitioner is no longer in violation of [Section 337]." 35 U.S.C. § 1337(k).

The Commission correctly denied Mayborn's petition for two independent reasons. First, the Commission may

only adjudicate patent validity when an invalidity defense is raised by a respondent in the course of an investigation or an enforcement proceeding pursuant to § 1337(b).  That did not occur here as Mayborn was not a party to the proceeding.  This court has carefully considered the Commission's power to adjudicate patent validity, first granted to it by Congress in the Trade Act of 1974, Pub. L. No. 93-618, 88 Stat. 1978 (1975), and we have long held that the Commission lacks authority to do so "when no defense of invalidity has been raised."  *Lannom Mfg. Co. v. Int'l Trade Comm'n*, 799 F.2d 1572, 1580 (Fed. Cir. 1986).  In *Lannom*, this court explained that § 1337(c) was enacted to abrogate precedent that barred the Commission from addressing a respondent's invalidity defense.  *Id.* at 1576–79; *see also* § 1337(c) (allowing a respondent to present "[a]ll legal and equitable defenses" in the course of an investigation authorized under § 1337(b)).  Since Mayborn's petition did not raise an invalidity defense in the course of an investigation or enforcement proceeding under § 1337(b), the Commission lacked the authority to adjudicate its invalidity challenge.

Furthermore, subsection (k)(1) does not permit an end-run around this rule.  19 C.F.R. § 210.76(a)(1) interprets the statute to allow a person to petition for rescission or modification of an exclusion order when the person "believes that changed conditions of fact or law, or the public interest, require that an exclusion order . . . be modified or set aside."  A petitioner's invalidity challenge is not, on its face, a changed condition under § 1337(k)(1) and is thus not a proper basis for a petition to rescind or modify an exclusion order.  The '850 patent has not been held to be invalid, which would indeed be a changed condition.

While Mayborn argues that the "public interest" generally lies in "resolving questions of patent validity," Mayborn Opening Br. 43–44 (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993) (internal quotation marks omitted)), the "public interest" in § 210.76(a)(1)

must be interpreted consistently with § 1337(k)(1), which only allows a petition that alleges changed conditions. Section 210.76(a)(1), consistent with § 1337(k)(1), thus requires a petitioner to show a change in the "public interest" conditions that led the Commission to issue the exclusion order in the first place. These public interest conditions are enumerated in Section 337 itself. Under § 1337(d)(1), the Commission must enter an exclusion order upon a finding of a violation "unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States customers" the Commission concludes the articles should not be excluded. None of those conditions has been shown here.

Here, as in many similar situations, the regulation's invocation of the public interest does not grant the agency a "roving commission," *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 551 (1935) (Cardozo, J., concurring) (citation omitted), nor can it be interpreted to greatly expand the limited nature of the authority granted to the Commission in Section 337, *see, e.g.*, *Kyocera*, 545 F.3d at 1355. Mayborn did not argue in its petition that the public interest conditions listed in § 1337(d)(1) had changed since the Commission issued the GEO, and its contention that the public interest favors its invalidity challenge is therefore meritless.

Mayborn also compares its invalidity challenge to the Commission's practice of rescinding exclusion orders once the patent at issue has been found invalid or unpatentable, but its analogy is inapt. A patent claim is extinguished upon a final judgment of invalidity or a final decision of unpatentability, and "[i]t is well established that an injunction must be set aside when the legal basis for it has ceased to exist." *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1354 (Fed. Cir. 2015). The Commission's practice is consistent with this principle and § 1337(k)(1), which

allows rescission of an exclusion order upon a changed condition of law.  In contrast, the legal status of the '850 patent is unaffected by Mayborn's wish to present an invalidity challenge.  *See Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1270 (Fed. Cir. 1985) ("A patent is born valid.  It remains valid until a challenger proves [its invalidity].").

### CONCLUSION

We have considered the parties' further arguments but find them unpersuasive.  The decision of the Commission is

## **AFFIRMED**