# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 1, 2024

Lyle W. Cayce
Clerk

No. 23-40591

Cheapside Minerals, Limited; Paul R. Lucas, Jr., *individually and as independent executor of* the Estate of Mary K. Lucas, *deceased*; James E. Natho; Mary Natho; McDougal Family 2003, Limited; Et al.,

*Plaintiffs—Appellees*,

*versus*

Devon Energy Production Company, L.P., *formerly known as* GeoSouthern DeWitt Properties, L.L.C.,

*Defendant—Appellant*,

consolidated with

No. 24-40026

Cheapside Minerals, Limited; McDougal Family 2003, Limited; Paul R. Lucas, Jr., *individually and as independent executor of* the Estate of Mary K. Lucas, *deceased*; James E. Natho; Mary Natho; Et al.,

*Plaintiffs—Appellees*,

*versus*

No. 23-40591
c/w No. 24-40026

Devon Energy Production Company, L.P., *formerly known as* GeoSouthern DeWitt Properties, L.L.C.,

*Defendant—Appellant.*

———————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:23-CV-34

———————————————

Before Jones, Willett, and Duncan, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Defendant Devon Energy Production Company, L.P. appeals from the district court's order remanding this oil-and-gas royalties dispute to Texas state court. Devon contends that the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, 1711–15 (CAFA), requires that this case be heard in federal court. The district court disagreed, finding CAFA's "local controversy" exception required the court to remand. We interpret the statute differently and, accordingly, VACATE its judgment remanding this case to state court.

## I. BACKGROUND

A group of 214 plaintiffs sued Devon in Texas state court, alleging that Devon had underpaid them in excess of $100 million in oil-and-gas royalties. Devon, a citizen of Oklahoma, is a lessee under certain leases concerning lands in Dewitt County, Texas.[1] Devon markets and sells hydrocarbons produced from wells on those lands and pays royalties to the Plaintiffs. Devon makes those payments to locations specified by Plaintiffs from its

---

[1] Although Devon is the only defendant bringing this appeal, it is not the only defendant in this case. The other defendants, BPX Operating Company, BPX Production Company, and GeoSouthern Energy Corporation, are all citizens of Texas.

No. 23-40591
c/w No. 24-40026

offices in Oklahoma City, Oklahoma. There is no dispute that more than two-thirds of Plaintiffs are citizens of Texas but that some Plaintiffs do not reside in Texas. In fact, some Plaintiffs reside in places that are thousands of miles away from Texas, such as Alaska, Massachusetts, and the United Kingdom.

Pursuant to CAFA, Devon removed this case to federal court. Plaintiffs sought remand based on CAFA's "local controversy" exception.[2] The district court agreed that the local controversy exception applied and ordered that the case be remanded.[3]

Devon appealed the remand order under 28 U.S.C. § 1291 and also filed a request to challenge the remand order under 28 U.S.C. § 1453(c). We consolidated the separate filings.

## II. DISCUSSION

"We review de novo whether the local controversy exception to CAFA jurisdiction should apply in this case." *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011) (per curiam).

### A.

Before turning to the merits, we first address our appellate jurisdiction. We granted Devon permission to appeal under § 1453(c), but we asked the parties to brief whether we additionally have jurisdiction based

---

[2] Plaintiffs also argued that CAFA's "local single event exclusion," *see* § 1332(d)(11)(B)(ii)(I), warranted remand of this case. The district court did not address that argument in its remand order. Plaintiffs do not argue the local single event exclusion applies in their appellate brief.

[3] The district court reasoned that Plaintiffs' lost royalties were real property interests. As shown in part II.B.i. of this opinion, the district court erred in making this determination. *See Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 363 (5th Cir. 1975).

on § 1291.[4]  As it happens, both the Eighth and Eleventh Circuits hold that appellants may rely on § 1291 for jurisdiction over an order remanding a case based on CAFA's local controversy exception.[5]  *See Simring v. GreenSky, LLC*, 29 F.4th 1262, 1265–66 (11th Cir. 2022) (court could hear appeal under § 1291 where appellant "did not rely at all on Section 1453" and "did not need to file a motion for permissive appeal"); *Kitchin v. Bridgeton Landfill, LLC*, 3 F.4th 1089, 1092 (8th Cir. 2021) ("[A]fter recognizing that we had previously denied the appellants permission to appeal under § 1453(c), we nevertheless proceeded to address their separately filed § 1291 appeal, concluding that we had jurisdiction under § 1291 to review the district court's application of the local-controversy exception." (citing *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1228 n.2, 1229 (8th Cir. 2012)); *see also* 10 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3931.2 (3d ed. 2023) ("An order remanding after removal under the Class Action Fairness Act . . . can be appealed as of right, and § 1447(d) does not bar review if the remand is based not on a lack of jurisdiction but on a decision to decline jurisdiction under the local-controversy exception or the home-state exception." (footnotes omitted)). We follow this persuasive authority.

Generally, 28 U.S.C. § 1447(d) limits this court's jurisdiction to hear appeals from orders remanding cases to state court.  Under § 1447(d), a remand order is unreviewable if the district court remands the case for lack

---

[4] Devon argues it could have brought this appeal under § 1453(c) or § 1291.  But Devon concedes that, "when permitted" § 1453(c) is the "superior alternative, and so it should be utilized here."  Plaintiffs agree with Devon that § 1453(c) is the preferable route to hear appeals concerning CAFA but offer no argument as to whether Devon could have brought this appeal under § 1291.

[5] The parties do not point to authorities exhibiting that other circuits have reached a contrary conclusion, nor are we aware of any.

of subject matter jurisdiction or a procedural removal "defect." *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127–28, 116 S. Ct. 494, 497 (1995); *Schexnayder v. Entergy La., Inc.*, 394 F.3d 280, 283 (5th Cir. 2004). Thus, when a case is remanded for a reason other than subject matter jurisdiction or a procedural "defect," § 1447(d) does not bar review and an appellant can rely on § 1291 to appeal the remand order. *See Firefighters' Ret. Sys. v. Citco Group Ltd.*, 796 F.3d 520, 525 (5th Cir. 2015) ("If the statutory bars to review do not apply, a remand order is a final order for the purposes of 28 U.S.C. § 1291." (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713, 116 S. Ct. 1712, 1719 (1996)).

CAFA provides a basis for expedited appellate review of appeals from orders that either remand or deny remand of class action litigation. It provides: "Section 1447 *shall apply* to *any removal* of a case under this section, except that *notwithstanding* section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed . . . ." § 1453(c)(1) (emphases added). But § 1453(c) did not supplant § 1291 and become the lone vehicle by which an appellant can obtain review of a final order remanding class action litigation to state court; it simply permits certain appeals denying remand that §§ 1447(d) and 1291 would have otherwise prohibited. *See BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp.*, 673 F.3d 169, 175–76 (2d Cir. 2012); *BP Am., Inc. v. Oklahoma ex rel. Edmondson*, 613 F.3d 1029, 1032–33 (10th Cir. 2010) (Gorsuch, J.) ("Congress has specifically and explicitly suspended the operation of § 1447(d) with respect to CAFA remand orders arising, like this one, under § 1453(c)(1).").

Moreover, § 1447(d) does not trump § 1291 to deny appeal of a remand order based on the local controversy exception, because § 1447(d) does not prohibit review of remands based on "abstention principles."

*Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697, 701 (5th Cir. 2006). This court has held that orders remanding cases under CAFA's local controversy exception are based on abstention principles. *Watson v. City of Allen*, 821 F.3d 634, 639 (5th Cir. 2016); *accord Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (per curiam) (referring to the local controversy exception as a "mandatory abstention provision of CAFA"). In sum, appellants may rely on § 1291 *or* § 1453(c) in appealing orders remanding a case under the local controversy exception. But only in appeals predicated on § 1453(c) is this court bound to rule within sixty days of our granting permission to appeal. *Compare* § 1453(c)(2), *with* § 1447; *see also Patterson v. Dean Morris, L.L.P.*, 444 F.3d 365, 370 (5th Cir. 2006).

## B.

Turning to whether the district court erred in remanding this case, neither party disputes that the district court had subject matter jurisdiction pursuant to CAFA, § 1332(d)(2).[6] Nevertheless, Plaintiffs urge, and the district court found, that this case belongs in state court because of CAFA's local controversy exception. That exception provides:

> A district court shall decline to exercise jurisdiction under paragraph (2)—
> (A)(i) over a class action in which—
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

---

[6] "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state." § 1332(d)(2).

(II) at least 1 defendant is a defendant—
(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and
(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

§ 1332(d)(4). Plaintiffs "bear the burden of establishing that they fall within [the] exception." *Opelousas Gen. Hosp. Auth.*, 655 F.3d at 360. The parties also agree that prongs I and II of the exception's statutory prerequisites are satisfied.

They dispute whether, as prong III requires, the "principal injuries" resulting from Devon's underpayment of royalties were sustained in Texas. For the following reasons, we agree with Devon that Plaintiffs failed to show the "principal injuries" from royalty underpayments were "incurred" in Texas.

i. **Where were Plaintiffs' injuries "incurred"?**

According to prong III, a local controversy must be one in which the "principal injuries" were "incurred" in the state where the action was first filed. Devon asserts that Plaintiffs suffered their injuries where they reside. Devon contends that an underpayment of an oil or gas royalty is an injury to personal property, and a plaintiff's residence is determinative of where the plaintiff suffers that injury. Plaintiffs see it differently. They argue that they

suffered their injuries "at the location specified for payment." (emphasis omitted). That location, according to Plaintiffs, is DeWitt County, Texas, because the leases make royalty payments "payable" there.

"Texas law provides that oil and gas are realty when in place and personalty when severed from the land by production." *Phillips Petroleum Co.*, 513 F.2d at 363 (collecting cases); *accord Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 982 (5th Cir. 1996) ("The right to payment for minerals already severed from the ground is considered personal property, not realty."). The distinction arises because "[t]he right to payment for past production obviously has no effect upon the value to the leaseholder of the oil and gas still in the ground," and, therefore, "accrued royalty interests are personal property, . . . as is the right to payment for severed minerals." *Phillips Petroleum Co.*, 513 F.2d at 363.

Plaintiffs allege that Devon underpaid their royalties on sales of hydrocarbons that were *already severed* from the subject real property. Their royalties consist of the "gross proceeds received for the *sale of production* from the Royalty Owners' Leases." (emphasis added). Underpayments of royalties owed thus comprise injuries to Plaintiffs' personal property.[7]

That still leaves unanswered *where* Plaintiffs suffered injuries to their personal property. To be sure, most Plaintiffs reside in Texas. But approximately ten percent of Plaintiffs either reside outside of Texas, requested that they be paid at addresses *outside* of Texas, or both.[8]

---

[7] Tellingly, Plaintiffs do not dispute this conclusion in their appellate brief, even though Plaintiffs previously defended the district court's conclusion that "under Texas law, royalty interests are interests in real property."

[8] Plaintiffs concede at least some Plaintiffs reside outside of Texas but note that approximately 90% reside in Texas. However, the exact number of Plaintiffs that reside in Texas is unclear. Devon points to twenty Plaintiffs who requested to be paid outside of

Generally, a plaintiff sustains an economic injury where he resides. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011) ("We have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 247 (6th Cir. 2009) ("Because the economic injury [plaintiff] suffered . . . was clearly felt at its corporate headquarters [in California], the district court did not err in holding that CMA's contract claim accrued . . . in California . . . ."); *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002) ("Where . . . the injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." (citation and quotations omitted)). Notably, this court has observed that a plaintiff feels the "direct effect" of being underpaid in the place where he resides. *See Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1110–12 (5th Cir. 1985) (holding, in regard to sovereign immunity, that "the breach of the certificates of deposits had direct effects in the United States" where plaintiffs resided, even though Mexico was specified as the place of payment "on the certificates themselves"). It follows that the Plaintiffs who reside or were paid at addresses outside of Texas could not have sustained their economic injuries in Texas because the underpayment of their royalties did not occur in Texas nor were its effects felt there. *See Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 310, 312–14 (5th Cir. 2000) (determining the location of economic injury based on "where plaintiffs bought the [defective] guns," *not* where those guns were manufactured); *see also Racca v. EFG Gen. Partner Corp.*, No. 1:22-CV-142, 2022 WL 2764735, at *5–6 (E.D. Tex. July 7, 2022) (Crone, J.)

---

Texas. Of those twenty, Plaintiffs allege that nineteen reside in Texas. Devon points out that only one of those nineteen Plaintiffs submitted an affidavit stating he resides in Texas. In their appellate brief, Plaintiffs do not direct this court to any evidence in the record rebutting Devon's evidence and their own allegations.

(concluding, in a CAFA case, that students who attended a Texas college remotely and lived outside of Texas sustained their injuries from the college's closure in the places where they resided). Thus, the Plaintiffs who reside outside of Texas sustained their injuries outside of Texas.

Plaintiffs counter that Devon agreed to pay royalties in Texas with the consequence that Devon's failure to satisfy its obligations occurred in Texas. Plaintiffs find support in the mineral leases, which state: "All royalties, surface damages, and other payments due under this lease *shall be payable in DeWitt County, Texas*, unless otherwise herein provided."[9] (emphasis added). This argument misses the mark for two reasons. First, making royalties "payable" in DeWitt County does not necessarily mean the leases *required* Devon to pay Plaintiffs there. *See Payable*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007) ("payable" means "that may, can, or must be paid"). Moreover, in no way does this lease provision mean all Plaintiffs were *actually* paid in DeWitt County. Second, it is undisputed that Devon paid Plaintiffs from its offices in Oklahoma, and a number of Plaintiffs requested that Devon pay them at addresses *outside* of Texas. Plaintiffs also concede that "[u]nder Texas law, a breach of contract injury occurs *at the location specified for payment*." (emphasis in original). Thus, at least *some* of the Plaintiffs sustained their injuries outside of Texas. Plaintiffs have failed to demonstrate they *all* sustained or "incurred" injuries in the state in which they brought this lawsuit.

---

[9] This quoted text derives from a lease executed in 2007, and Plaintiffs represent that all leases contain this quoted text. Devon, however, "does not concede that Plaintiffs established that the DeWitt County payment provision exists in 'every single' Plaintiffs' lease."

No. 23-40591
c/w No. 24-40026

### ii.   Must all injuries have occurred in Texas for the local controversy exception to apply?

The more challenging, and novel, question is how to interpret the "principal injuries" that must have been incurred within the forum state under prong III of the local controversy exception. The parties join issue over whether "principal injuries" means that *all* Plaintiffs, or some quantity of Plaintiffs, must have suffered their injuries in Texas. As a matter of statutory interpretation, "we follow the plain and unambiguous meaning of [§ 1332(d)(4)(A)(i)(III)], interpreting undefined terms according to their ordinary and natural meaning and the overall policies and objectives of the statute." *NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014) (citation and quotations omitted).

Plaintiffs contend they satisfy the principal injuries prong because the vast majority of Plaintiffs were underpaid their royalties in Texas and, therefore, their "principal injuries" occurred in the forum state. In other words, "principal" means "most" of the Plaintiffs who were injured. We hold, to the contrary, that Plaintiffs' interpretation of "principal" is contrary to the prong III provision's plain meaning. As shown below, the meaning of "principal injuries" is unambiguous. "Principal injuries" qualitatively and comparatively evaluates the types of injury, not the quantity of plaintiffs who were injured. Thus, when some plaintiffs sustain their primary injuries in the forum state but others do not § 1332(d)(4)(A)(i)(III) is not satisfied.[10]

---

[10] To be sure, the legislative history of CAFA suggests that not all plaintiffs are required to suffer their principal injuries in the forum state to satisfy the principal injuries prong. *See* Sen. Rep. No. 109-14, 40, 2005 U.S.C.C.A.N. 3, 38 (2005) ("[T]he principal injuries resulting from the actions of all the defendants must have occurred in the state where the suit was filed. By this criterion, the Committee means that all *or almost all* of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought." (emphasis added)). But "[o]nly after application of principles of statutory construction, including the canons of construction, and after a conclusion that the statute

No. 23-40591
c/w No. 24-40026

CAFA does not define the term "principal." *See* § 1332(d). But in other contexts, the Supreme Court and this court have observed that "principal" is synonymous with "primary," "chief," and "[f]irst or highest in rank, quality, or importance." *See, e.g., Brown v. Plata*, 563 U.S. 493, 525, 131 S. Ct. 1910, 1936 (2011); *State Farm Fire & Cas. Co. v. Lange*, 480 F. App'x 309, 313 (5th Cir. 2012). Dictionaries in use at the time Congress enacted CAFA also attach this definition to "principal." *See Principal*, BLACK'S LAW DICTIONARY (8th ed. 2004) ("principal" means "[c]hief; primary; most important"); *Principal*, MERRIAM-WEBSTER'S THIRD NEW INT'L DICTIONARY (11th ed. 2002) ("principal" means "most important, consequential, or influential . . . relegating comparable matters, items, or individuals to secondary rank").[11] Read as an adjective that describes "injuries," it is common sense that a defendant's conduct can result in "principal injuries" that are more important than others. For example, as Devon explains, a "personal injury plaintiff may suffer bodily harm in Texas (the principal injury) but incur medical bills payable in Florida (a secondary injury)."

The structure of CAFA also supports our interpretation of "principal injuries." First, CAFA ties the "principal injuries" sustained to the *entire* class, not just a subset of it. CAFA requires plaintiffs to show that the "principal injuries . . . were incurred *in* the State in which the action was originally filed." § 1332(d)(4)(A)(i)(III). There is no exception for cases in which *most* plaintiffs sustain the principal injury in the forum state but some do not. Thus, to remand a case to state court when some plaintiffs sustained

---

is ambiguous may [we] turn to the legislative history." *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015). Because § 1332(d)(4)(A)(i)(III) as enacted is unambiguous, we do not consider legislative history.

[11] Notably, Plaintiffs concur with this definition of "principal."

the principal injuries outside of the forum state would essentially rewrite the statute, which we may not do. *See Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 168 n.16, 113 S. Ct. 2549, 2557 n.16 (1993) ("[W]e may not add terms or provisions [to a statute] where congress has omitted them . . . ." (citation omitted)).

In other parts of CAFA, Congress enumerated when *fewer than* all plaintiffs must meet certain requirements. *See* § 1332(d)(2),[12] (3),[13] (4)(A)(i)(I), (4)(B).[14] Accordingly, the first prong of the local controversy exception is satisfied when "*greater than two-thirds* of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed." § 1332(d)(4)(A)(i)(I). But Congress did not enumerate the proportion of plaintiffs necessary under the nearby principal injuries prong. *See* § 1332(d)(4)(A)(i)(III). Had Congress intended to require that only two-thirds of plaintiffs suffer their principal injuries in the forum state to satisfy the principal injuries prong, it could have said so. *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54, 112 S. Ct. 1146, 1149 (1992) ("[C]ourts must presume that [Congress] says in a statute what it means and means in a statute what it says there."). "[W]hen Congress includes particular language in one section of a statute but omits it in another[,]" this court "presumes that Congress intended a difference in

---

[12] *See supra* note 6.

[13] "A district court may . . . decline to exercise jurisdiction under paragraph (2) over a class action in which *greater than one-third but less than two-thirds* of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of . . . ." § 1332(d)(3) (emphasis added).

[14] "A district court shall decline to exercise jurisdiction under paragraph (2) [when] *two-thirds or more* of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." § 1332(d)(4)(B) (emphasis added).

No. 23-40591
c/w No. 24-40026

meaning." *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 161, 138 S. Ct. 767, 777 (2018) (alteration in original) (citation and quotations omitted).

Moreover, Congress explicitly carved out exceptions to federal jurisdiction based on injuries that occurred inside and outside the forum state. CAFA provides that "mass actions"[15] can be removed to federal court.[16] But Congress provided that "the term 'mass action' shall not include any civil action in which . . . all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State *or in States contiguous to that State* . . . ." § 1332(d)(11)(B)(ii)(I). Congress did not include similar language in the principal injuries prong. *See* § 1332(d)(4)(A)(i)(III). As explained above, we presume Congress deliberately omitted such language from § 1332(d)(4)(A)(i)(III) because it intended to require that *all* plaintiffs sustain their principal injuries in the forum state and nowhere else. *See Digital Realty Tr., Inc.*, 583 U.S. at 161, 138 S. Ct. at 777; *Conn. Nat. Bank*, 503 U.S. at 253–54, 112 S. Ct. at 1149.

Finally, our interpretation of the local controversy exception complies with the requirement that we construe the exception narrowly and "with all doubts resolved in favor of exercising jurisdiction over the case." *Opelousas Gen. Hosp. Auth.*, 655 F.3d at 360 (citations and quotations omitted); *see also*

---

[15] "[T]he term 'mass action' means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) . . . ." § 1332(d)(11)(B)(i).

[16] "For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs." § 1332(d)(11)(A).

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 337 (5th Cir. 2016) ("Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and the exceptions provide a statutory vehicle for the district courts to ferret out the controversy that uniquely affects a particular locality to the exclusion of all others." (citation and quotations omitted)).  Indeed, "[t]he language, structure, and history of CAFA all demonstrate that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Arbuckle Mountain Ranch of Tex., Inc.*, 810 F.3d at 337 (citation and quotations omitted).

Here, the "principal injury" each Plaintiff sustained is obvious because there was only one type of injury:  a financial harm resulting from Devon's alleged underpayment of their royalties.  While most Plaintiffs sustained that injury in Texas, others did not.  Therefore, the principal injuries prong is not satisfied in this case, and Plaintiffs have failed to demonstrate that the local controversy exception applies.

## CONCLUSION

Because CAFA's local controversy exception does not apply, we VACATE the judgment of the district court, REMAND to the district court, and DIRECT that the case be reinstated on that court's docket.